USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-21-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

NIDIA BARCIA, et al.,

                             Plaintiffs,

          - against -

LOUIS SITKIN, et al.,

                         Defendants.

-------------------------------------------------------------X

79 Civ. 5831 (LAP)

## RE-REVIEW MODIFICATION STIPULATION AND ORDER

This Re-review Modification Stipulation and Order ("Modification Stipulation") is made by and between the Plaintiffs and Defendants New York State Unemployment Insurance Appeal Board ("Board") and New York State Department of Labor ("Department") (collectively, "Defendants") (Plaintiffs and Defendants, collectively, "the Parties") and is effective on the date that this Modification Stipulation is so-ordered by the Court:

WHEREAS, in an Opinion and Order dated September 8, 1994, *Barcia v. Sitkin,* 865 F. Supp. 1015 (S.D.N.Y. 1994) ("*Barcia*"), the Court: (a) held the Board in contempt for violations of the 1983 Consent Judgment ("Decree"); (b) directed the Board to apply, on a limited retroactive basis, a "may have affected the outcome" standard of review to all cases decided adverse to claimants where the case had a serious checklist violation (*id.* at 1032-33); and (c) ordered various other forms of remedial relief;

WHEREAS, in an Opinion and Order dated August 21, 1996 ("August 1996 Order"), the Court found that the Board had failed to comply with certain fair hearing aspects of the Decree

and with certain remedial directives set forth in its September 8, 1994 Opinion and Order ("September 1994 Order"), and directed the Board to comply with its orders as set forth in the September 1994 and August 1996 Orders (*see Barcia*, 945 F. Supp. 539 (S.D.N.Y. 1996));

WHEREAS, the Defendants appealed the Court's September 1994 Order to the United States Circuit Court of Appeals for the Second Circuit, and the Plaintiffs cross-appealed;

WHEREAS, the parties entered into an agreement to resolve their cross-appeals which was "so ordered" by the Court on December 19, 1997 ("Re-Review Order," annexed hereto as Attachment A), that, among other things: (a) established a procedure for Defendants to comply with the Court's contempt rulings; (b) provided procedures and protocols for the Board to implement relief for claimants whose cases had not been reviewed under the "may have affected the outcome" standard; and (c) resolved Defendants' and Plaintiffs' respective appeal and cross-appeal regarding the application of the Decree's Checklists and the appropriate Decree standard of review;

WHEREAS, Defendants have nearly completed the re-review of the cases designated by the Re-Review Order as "Class Member" claims and have completed a substantial number of the cases designated by the Re-Review Order as "Prospective Claims;"

WHEREAS, paragraph 29 of the Re-review Order provides for informal discussion and mediation for the purpose of resolving disputes regarding the implementation and interpretation of the Re-Review Order;

WHEREAS, the parties have engaged in informal discussions and mediation and agree that modification of the Re-Review Order will result in meeting the objectives of that Order;

WHEREAS, paragraphs 6 and 7 of the Re-Review Order authorize the parties to change the Checklist Items and Guidelines, set forth in Appendix 3 of the Re-Review Order, and provide that the changed Guidelines do not apply retroactively;

WHEREAS, the parties, with the aid and guidance of the Court provided during settlement conferences and mediation, have agreed to concentrate the remaining re-review effort on those substantive and procedural areas that are most likely to have adversely affected claimants falling within the Prospective Claims identified in the Re-Review Order;

WHEREAS, the parties have intensively negotiated, in good faith and at arm's length, each of the terms of this Modification Stipulation and the appendices hereto;

WHEREAS, the modifications set forth herein provide for a full exchange of data and other information that would allow the parties to make informed decisions as to the most expedient and cost-effective means of completing the re-review process, while ensuring that eligible Prospective Claims obtain a fair and equitable re-review consistent with their due process rights;

WHEREAS, the parties have agreed upon measures for Plaintiffs' Counsel to independently verify compliance with the terms of this Modification Stipulation, including their participation in the development of training materials for the preliminary file review procedure, through a review of a random sample of case files that include both full re-reviews and preliminary file reviews, and receipt of monthly payout reports showing payment to all claimants covered by this Modification Stipulation who are granted benefits after having their cases reopened;

WHEREAS, Defendants have reserved the right, at their sole discretion, to terminate this Modification Stipulation if certain targets for reducing the number of Prospective Claims requiring re-review hereunder are not met;

WHEREAS, if Defendants comply with the Re-Review Order, as amended by this Modification Stipulation, such compliance shall constitute a full and final resolution of the parties' disputes with respect to Defendants' conduct under the Re-Review Order and this case will be closed; and

WHEREAS, if Defendants exercise their right to terminate this Modification Stipulation, then the parties shall be put back in the same position they would have been in had this Modification Stipulation not been executed, including without limitation the Defendants having the right to file a motion to modify the Re-Review Order and the Plaintiffs having the right to cross-move for enforcement of the Re-Review Order;

**NOW, THEREFORE, IT IS STIPULATED AND AGREED,** by and between the undersigned counsel for the parties to this action, as follows:

1.    The Re-Review Order, annexed hereto as Attachment A, is incorporated herein except as specifically amended by this Modification Stipulation.

2.    Prospective Claims

a.    *Cases Decided Between 1/1/1995-12/31/1997.* For Prospective Claims decided between January 1, 1995 to December 31, 1997, the parties agree as follows

i.    *Cases Decided Between 9/1/1996-12/31/1997.* The Board has re-reviewed 5,978 of the Prospective Claims decided adversely to claimants between January 1, 1995 to December 31, 1997, but it is unclear from available information whether this represents all of the adverse cases with one or more

4

major checklist violations from this time period.[1]  As agreed by the parties, the Board reviewed the checklists from a small sample of the remaining adverse cases in this time period (a total of 18,569 cases) to confirm that there are no cases left in this group with major checklist violations (subject to a tolerance level of 12.5% to account for any major checklist violation cases that may have been inadvertently overlooked, i.e. no more than 37 cases in the sample with one or more major checklist violations (including a margin of error)).  The sample consisted of 280 cases selected at random from the 18,569 remaining cases.  The Board's review of the checklists for the 280 cases (copies of which the Board will provide to Plaintiffs' counsel within ten (10) days of submission of this Modification Stipulation to the Court) confirmed that fewer than 37 cases in the sample have one or more major checklist violations, and therefore the parties agree that no further re-review of cases decided between September 1, 1996 to December 31, 1997 shall be required under the Re-Review Order.

   ii.      *Cases Decided between 1/1/1995-8/31/1996.*  With respect to adverse cases decided between January 1, 1995 to August 31, 1996, the parties agree that the Board will include in the process set forth in paragraph 3 below only those cases in which: (A) the claimant's surname is one of the Hispanic surnames set forth on the list attached as Appendix A; or (B) the issue is refusal of new work or availability for employment.  The Board will provide to Plaintiffs' counsel a list of the adverse cases decided between January 1, 1995 to August 31, 1996 indicating the cases that meet the criteria specified in (A) or (B) above using

---

[1] The term "major checklist violation" shall have the same meaning as set forth in the Re-Review Order.

queries developed and applied pursuant to paragraph 8 below.

b. *Cases Decided Between 1/1/98-5/31/1998.* For Prospective Claims decided between January 1, 1998 to May 31, 1998 (the last date for claims falling within the designation of Prospective Claims under the Re-Review Order), the parties agree as follows:

    i.      the Board will exclude from the process set forth in paragraph 3 below those cases in which the checklist completed by the Board at the time of the initial review does not indicate at least one violation of any of checklist items 3, 4, 10a, 10b, 11, 12, 15, 16a, 16b, 16c, 17a, 17b, 19, 20, 23a, 23b, 23c, 24, 26, or 27a and will provide to Plaintiffs' counsel a list of the cases to be excluded based on these criteria.

        1.      For the subset period March 1, 1998 to May 31, 1998, the Board will identify the cases meeting the checklist criteria in 2.b.i. by using queries developed and applied pursuant to paragraph 8 below.

        2.      For the subset period January 1, 1998 to February 28, 1998 (for which no data exists), the Board will provide to Plaintiffs' counsel a copy of the checklists for those cases and Plaintiffs' counsel shall within fifteen (15) business days of receiving the checklists either confirm that the list of cases to be excluded for this time period is correct or identify any cases incorrectly excluded based solely on a comparison of the information contained in the checklists against the checklist items enumerated above.

    ii.      For Prospective Claims decided between January 1, 1998 to May 31, 1998 that are not excluded pursuant to the process set forth in paragraph 2.b.i.

above, the Board shall review the decision in each case and exclude from the

process set forth in paragraph 3 below any case where the outcome was favorable

to the claimant. The Board shall provide Plaintiffs' counsel with a list of the

cases excluded pursuant to this paragraph 2.b.ii.

     3.    <u>Search for Last Known Address</u>. The Board shall run a LexisNexis People Finder

search, using the Accurint or other LexisNexis product with similar features, on the Prospective

Claims decided adversely to claimants from January 1, 1990 to May 31, 1998 as required by the

Re-Review Order (excluding cases decided in calendar year 1994 and those eliminated pursuant

to paragraph 2 above) that involve one or more of the following issues as determined by applying

queries developed and applied pursuant to paragraph 8 below:

     a.  Misconduct;

     b.  Voluntary quit;

     c.  Refusal of new work;

     d.  Availability;

     e.  Lack of total unemployment;

     f.  Reasonable assurance; and

     g.  Cases in which the claimant's surname is one of the Hispanic surnames set forth
         on the list attached as Appendix A.

For the avoidance of doubt, cases that are excluded from the People Finder search under the

terms of this Modification Stipulation shall not be subject to any re-review under this

Modification Stipulation. The Board shall provide Plaintiffs' counsel with a copy of the results

of the People Finder search.

     4.    <u>Solicitation of Claimant's Interest in Further Consideration</u>. After obtaining the

results of the LexisNexis People Finder search (the "Search Results"), the Board shall eliminate

from the re-review process those claimants whose addresses are not found and claimants who are listed in the Search Results as deceased with no estate representative, and shall provide Plaintiffs' counsel with a mailing list consisting of the remaining claimants from the Search Results. The Board shall send by first class mail to each of the claimants on the mailing list at the addresses obtained from the Search Results a notice in the form annexed hereto as Appendix B requesting that the claimant confirm an interest in having his or her claim potentially subject to further consideration. Claimants who fail to return the form provided with the notice within forty five (45) days of the mailing date of the Notice, pursuant to the instructions in the notice, as indicated through either a postmark or a fax confirmation, shall be eliminated and shall not be eligible for re-review under this Modification Stipulation. The Board shall provide Plaintiffs' counsel with a copy of the returned forms received by the Board by the deadline specified in the notice no later than ten (10) business days after the deadline.

     5.    <u>The Re-Review Procedure</u>.

        a.    If the number of Prospective Claims subject to the re-review process after following the steps set forth in paragraphs 2, 3 and 4 above (the "Remaining Prospective Claims") is reduced to 3,000 or below, the parties agree no further reduction is required and the Board shall conduct full file reviews and apply the "may have affected the outcome" remedial standard for the Remaining Prospective Claims, which shall constitute full compliance by Defendants with the terms of the Re-Review Order with respect to Prospective Claims.

        b.    If the number of Remaining Prospective Claims exceeds 3,000, then the parties agree as follows:

            i.    If the number of Remaining Prospective Claims equals or exceeds 7,500, then the Board may, at its sole discretion, terminate this Modification

Stipulation, in which case the parties shall be put back into the same position they would have been in had this agreement not been executed, including without limitation the Defendants having the right to file a motion to modify the Re-Review Order and the Plaintiffs having the right to cross-move for enforcement of the Re-Review Order.

  ii.  If the number of Remaining Prospective Claims is less than 7,500, or the Board elects not to exercise its right under paragraph 5.b.i. above to terminate this Modification Stipulation, then the parties agree that the Board shall conduct a "Preliminary File Review" of only the following documents in the case record: the Department of Labor's initial determination; the ALJ decision; and the statements submitted to the Board on appeal ("Preliminary File Review Documents"). The Board is not required to review any other document from the case record as part of the Preliminary File Review. The Board shall determine whether a full file review is warranted based on the results of the Preliminary File Review in accordance with the Preliminary File Review Guidelines annexed as Appendix C hereto. The Board will not be required to conduct any further review of cases for which it determines pursuant to the Preliminary File Review that a full file review is not warranted.

  iii.  Notwithstanding any other provisions of this paragraph 5, the Board retains the right to terminate this Modification Stipulation if, during the process of conducting Preliminary File Reviews under paragraph 5.b.ii. above, the percentage of the cases requiring a full file review when multiplied by the Remaining Prospective Claims exceeds 3,000. In the event the Board exercises

this right of termination, the parties shall be put back into the same position they would have been in had this Modification Stipulation not been executed, including without limitation the Defendants having the right to file a motion to modify the Re-Review Order and the Plaintiffs having the right to cross-move for enforcement of the Re-Review Order.

c.     With respect to the Class Member Claims (of which approximately 478 cases remain), the Board shall continue to complete the reviews under its current procedure until completion, which shall constitute full compliance by Defendants with the terms of the Re-Review Order with respect to Class Member Claims.

6.     <u>Inspection</u>.

a.     Plaintiffs' counsel shall have the right to inspect a total of 125 cases of the Remaining Prospective Claims completed over the first five months of the implementation of this Modification Stipulation, with 25 of the total selected each month (of which 10 shall be randomly selected from cases that were not subject to full file review and 15 shall be randomly selected from cases that were subject to full file review, but where the decision remained unfavorable to the claimant). The files selected for inspection shall be copied by the Board and delivered to the offices of Plaintiffs' counsel at 470 Park Avenue South, New York, New York, as soon as practicable.

b.     The parties agree that Plaintiffs' counsel shall vacate the office space they currently occupy at the Board's Brooklyn offices within four weeks from the date this Modification Order becomes effective.

7.     <u>Benefit Payments</u>. Plaintiffs' counsel shall be provided with: (i) a monthly payout report for the Remaining Prospective Claims in accordance with paragraph 22 of the May

12, 1997 People Finder Stipulation and Order and current practice, until all claimants comprising the Remaining Prospective Claims found to be entitled to benefits have been paid; and (ii) on a quarterly basis, the name, address, decision number, and date of decision of each claimant who receives a favorable decision as a result of the re-review process set forth in this Modification Stipulation, until all of the re-reviews required by this Modification Stipulation for the Remaining Prospective Claims are completed.

8.    <u>Data Protocol Specifications</u>.  Within 90 days of the date the Modification Stipulation becomes effective, Defendants' data expert and Plaintiffs' data expert will develop agreed upon standard file formats in the form of spreadsheets and/or csv files and queries necessary to apply the criteria specified in paragraphs 2.a.ii., 2.b.i., and 3 above.

9.    <u>Billing</u>.

a.    With respect to time reasonably spent by attorneys inspecting the files pursuant to paragraph 6(a) above, Plaintiffs' counsel's bills shall be at the reduced rates of $500/hour for a senior attorney (David Raff or Bob Becker), $325 for a mid-level attorney (Maria Guarnieri or attorneys with a similar level of experience) and $220/hour for a junior attorney (Jacob Korder or attorneys with a similar level of experience).

b.    With respect to time reasonably spent developing the data protocol specifications pursuant to paragraph 8 above, Plaintiffs' counsel's bills shall be at the rates of $250/hour for data expert Mary Wiener and $130/hour for a data administrator.

c.    With respect to time spent related to the development of training materials for the Preliminary Review process, Plaintiffs' counsel agree that they will not submit bills charging for time to review the training material proposed by the Board, and agree that they will cap, for billing purposes, the time spent negotiating revisions of the training

materials with Defendants to a maximum of ten (10) hours at the rates set forth in paragraph 9(a) above.

        d.        Except as provided under paragraphs 9(a), (b), and (c), Plaintiffs' counsel shall not render any bills for time spent in connection with implementing the terms of this Modification Stipulation.

        e.        Plaintiffs' counsel shall submit all bills rendered in accordance with this paragraph 9 for initial review by Defendants and then, after affording Defendants a reasonable period for comment, for review and approval by the Court in compliance with the current protocol.

10.    <u>Communications</u>.  Any communications between Plaintiffs' counsel and Defendants required under this Modification Stipulation shall be sent by email, FedEx one-day delivery, UPS Express Mail, or overnight courier to the following:

- for Plaintiffs' counsel:

    RAFF & BECKER LLP
    David Raff
    Robert Becker
    470 Park Avenue South, 3rd Floor N.
    New York, New York 10016
    Email: raffd@raffbecker.com
           beckerr@raffbecker.com

- for Defendant(s):

    ERIC T. SCHNEIDERMAN
    Attorney General of the State of New York
    Jane R. Goldberg
      Assistant Attorney General
    Andrew S. Amer
      Special Litigation Counsel
    120 Broadway
    New York, New York 10271
    Email: Jane.Goldberg@ag.ny.gov
           Andrew.Amer@ag.ny.gov

11.    <u>Funding.</u>  Without prejudice to the Defendants' position on source of funding in this or

any other case, Defendants agree not to use New York's federal unemployment insurance administration

grant funds to pay any of the costs and fees associated with implementing the re-review procedures for

Prospective Claims set forth in this Modification Stipulation.


Dated: August 18, 2017                      RAFF & BECKER LLP
         New York, New York              <u>Attorneys for the Plaintiff Class</u>
                                        By:


                                        David Raff
                                        470 Park Avenue South, 3rd Floor N.
                                        New York, New York 10016
                                        (212) 732-5400
                                        Email: raffd@raffbecker.com


                                        ERIC T. SCHNEIDERMAN
                                        Attorney General of the State of New York
                                        <u>Attorney for Defendants</u>
                                        By:


                                        Jane R. Goldberg
                                          Assistant Attorney General
                                        Andrew S. Amer
                                        Special Litigation Counsel
                                        120 Broadway
                                        New York, New York 10271
                                        (212) 416-6133
                                        Email: <u>Jane.Goldberg@ag.ny.gov</u>
                                                         <u>Andrew.Amer@ag.ny.gov</u>


IT IS SO ORDERED:

This 21st day of September, 2017.

Loretta A. Preska
United States District Judge

APPENDIX A

| | | | |
|---|---|---|---|
| ACEVEDO | DIAZ | MEDINA | ROSALES |
| ACOSTA | DOMINGUEZ | MEJIA | ROSARIO |
| AGUILAR | DUARTE | MELENDEZ | RUBIO |
| AGUIRRE | DURAN | MENDEZ | RUIZ |
| ALVARADO | ESCOBAR | MENDOZA | SALAS |
| ALVAREZ | ESPARZA | MERCADO | SALAZAR |
| ANDRADE | ESPINOZA | MEZA | SALINAS |
| ARELLANO | ESTRADA | MIRANDA | SANCHEZ |
| ARIAS | FERNANDEZ | MOLINA | SANDOVAL |
| ARROYO | FIGUEROA | MONTES | SANTANA |
| AVILA | FLORES | MONTOYA | SANTIAGO |
| AYALA | FRANCO | MORA | SANTOS |
| BARAJAS | FUENTES | MORALES | SERRANO |
| BARRERA | GALLEGOS | MORENO | SILVA |
| BAUTISTA | GALVAN | MUNOZ | SOLIS |
| BELTRAN | GARCIA | MURILLO | SOSA |
| BENITEZ | GARZA | NAVARRO | SOTO |
| BONILLA | GOMEZ | NUNEZ | SUAREZ |
| CABRERA | GONZALES | OCHOA | TAPIA |
| CALDERON | GONZALEZ | OROZCO | TORRES |
| CAMACHO | GUERRA | ORTEGA | TREVINO |
| CAMPOS | GUERRERO | ORTIZ | TRUJILLO |
| CANTU | GUTIERREZ | PACHECO | VALDEZ |
| CARDENAS | GUZMAN | PADILLA | VALENCIA |
| CARRILLO | HERNANDEZ | PENA | VALENZUELA |
| CASTANEDA | HERRERA | PEREZ | VARGAS |
| CASTILLO | HUERTA | PINEDA | VASQUEZ |
| CASTRO | IBARRA | PONCE | VAZQUEZ |
| CERVANTES | JIMENEZ | RAMIREZ | VEGA |
| CHAVEZ | JUAREZ | RAMOS | VELASQUEZ |
| CISNEROS | LARA | RANGEL | VELAZQUEZ |
| COLON | LEON | REYES | VELEZ |
| CONTRERAS | LOPEZ | RIOS | VILLA |
| CORDOVA | LOZANO | RIVAS | VILLANUEVA |
| CORTEZ | LUCERO | RIVERA | VILLARREAL |
| CRUZ | LUNA | ROBLES | VILLEGAS |
| CUEVAS | MACIAS | ROCHA | ZAMORA |
| DAVILA | MALDONADO | RODRIGUEZ | ZAVALA |
| DELACRUZ | MARQUEZ | ROJAS | ZUNIGA |
| DELEON | MARTINEZ | ROMAN | |
| DELGADO | MATA | ROMERO | |

APPENDIX B



**NEW YORK** STATE OF OPPORTUNITY. | **Unemployment Insurance Appeal Board**

PO Box 15126
Albany, N.Y. 12212-5126
Phone: 518-402-0205
Fax: 518-402-0215

To: Certain Claimants Who Were Denied Unemployment Insurance
Benefits as a Result of a Decision of the Unemployment Insurance
Appeal Board Between January 1, 1990 and May 31, 1998

As a result of a federal court order on [date], 2017, the Unemployment
Insurance Appeal Board is taking steps to determine whether certain
claimants who received decisions from the Board between January 1, 1990
and May 31, 1998 denying their claims for unemployment insurance benefits
may be entitled to a further review of their cases.

In connection with this process, the Board requires your assistance. If you
want your case to be included for the Board's consideration of possible further
review, you must complete the enclosed form (front and back), sign your
name indicating your interest in having your case included for consideration,
and return the form by mail in your own postage paid (stamped) envelope to
the address on the enclosed form, or by Fax to the Fax number on the
enclosed form, no later than [insert date 45 days from mailing], as indicated by
postmark or fax confirmation.

**IMPORTANT:  MAKE AND KEEP A COPY OF THE COMPLETED FORM**

**If you do not complete and return the form by [insert date 45 days
from mailing], the Board will not consider your case for possible
further review.  If you change your mailing address any time after you
return this form, please notify the Board at the address indicated at
the top of this page.**

Please note that if your case is considered for possible further review, you
may need to provide additional evidence concerning your work history during
the period of your claim in order to receive payments for benefits that may be
due.  This may include proof of your earnings during that period (such as
wage records, pay stubs, tax returns, and W2 forms) and days you worked on
the weeks you become eligible as a result of any new decision issued in your
case.

If you have any questions about this notice, you can call the Board at 518-
402-0205, or contact Raff & Becker LLP, attorneys for Plaintiffs, at 212-732-
5400 or by email at: claimants@raffbecker.com.

(consulte el reverso de este aviso en español)



**NEW YORK** STATE OF OPPORTUNITY. | **Unemployment Insurance Appeal Board**

PO Box 15126
Albany, N.Y. 12212-5126
Phone: 518 402-0205
Fax: 518-402-0215

## ALL CLAIMANTS MUST COMPLETE AND RETURN THIS FORM (FRONT AND BACK) IF THEY WANT TO HAVE THEIR CASE CONSIDERED FOR POSSIBLE FURTHER REVIEW

Name (please print): _____

Social Security No.: _____

Address:

Street _____
Apt. No. _____
City/State/Zip _____
Phone _____
Email _____
Date of Birth _____

**BY RETURNING THIS COMPLETED FORM, I AM INDICATING MY INTEREST IN HAVING THE BOARD CONSIDER MY CASE FOR POSSIBLE FURTHER REVIEW. I BELIEVE ONE OR MORE OF THE FOLLOWING STATEMENTS MAY BE TRUE WITH RESPECT TO MY UNEMPLOYMENT INSURANCE HEARING OR THE DECISION OF THE BOARD THAT DENIED UNEMPLOYMENT INSURANCE BENEFITS:**

- the judge or the Board considered different facts when deciding the case against me from those the Department of Labor considered in making its determination

- the judge or the Board failed to offer me the opportunity to review and comment on a document(s) that was considered in deciding my case

- the judge failed to offer me the opportunity to question a witness who testified for the employer or the Department of Labor

- I had difficulty in questioning witnesses who testified for the employer or the Department of Labor, and the judge did not offer to assist me

- I had difficulty reading, speaking or understanding English, and a Spanish interpreter was not provided or did not interpret the entire hearing or a relevant part of a document

- the judge did not give me the opportunity to produce a necessary witness or document, or issue a subpoena for a necessary witness or document.

- the judge did not appear to act impartially in conducting the hearing

- the judge or the Board decided that I refused an offer of work or that I was not available for work, but the judge or the Board did not ask me if I had been properly informed of the procedures or guidelines I was required to follow

**(see other side)**



**NEW YORK STATE OF OPPORTUNITY.** | **Unemployment Insurance Appeal Board**

PO Box 15126
Albany, N.Y. 12212-5126
Phone: 518 402-0205
Fax: 518-402-0215

- the judge or the Board found that I refused an offer of work or that I was not available for work, but my failure to follow the procedures or guidelines was due to the Department of Labor not informing me of them or not providing them in Spanish

- the judge or the Board believed hearsay evidence from the employer instead of my sworn testimony, but the decision did not explain why

- [applicable to an educational employee] my employer failed to demonstrate that I had been given reasonable assurance of similar educational employment in the next academic term or year

- [applicable to an educational employee] the judge presumed that because I was on a per diem substitute teacher list I had reasonable assurance of continued similar employment in the next academic term or year

- [applicable to an educational employee] I was not given an opportunity to challenge or rebut the employer's case that I had reasonable assurance of continued similar employment in the next academic term or year

- the decision of the judge had one or more of the following problems:
    - o the decision did not contain facts that were supported by the testimony and evidence in the case
    - o the decision indicated that the employer was believed and that I was not believed, but it did not explain why that conclusion was reached
    - o The decision did not explain why the facts that were found led to the conclusion that I was disqualified or ineligible

**I certify that the information provided on this form is true to the best of my knowledge and belief.**

Signature: _____    Date: _____

MAIL completed form, in your own postage paid (stamped) envelope, to:

Unemployment Insurance Appeal Board
PO Box 5126
Albany, New York 12212-5126

-OR-

FAX the competed form to:  518-402-0215

**Appendix C**

**Preliminary File Review Guidelines**

The Board will develop training materials for all ALJs who will be involved in the preliminary review set forth herein and will provide such materials in draft form to plaintiffs' counsel with a reasonable opportunity for comment by them prior to the start of training.

The Board will undertake a review of the full hearing record to determine if a serious checklist violation may have affected the outcome of the case and demands a remedy if any of the following is discovered during the Preliminary File Review:

1. The ALJ decision results in disqualification or ineligibility in reliance upon a factual basis which is not stated in the notice of determination or the employer's objection.

2. The ALJ opinion indicates that the outcome is based upon a document(s) or the claimant's statement(s) submitted on appeal includes a contention that the claimant was not confronted with a document that the ALJ may have considered at the hearing.

3. The claimant is Spanish-speaking and it is not clear from a review of the decision, or the part of the transcript listing appearances that Spanish interpretation was provided at the hearing.

4. The ALJ decision rests upon the absence in the record of a witness or document to support the claimant's position.

5. The claimant's statement(s) on appeal contains a contention that the claimant has a witness or document that may be necessary.

6. If review of the documents that are the subject of the Preliminary File Review indicates that a paragraph 9 issue is present, or the claimant contends in a statement submitted on appeal that he did not receive information regarding how to comply with Department requirements for maintaining eligibility. Paragraph 9 issues include availability cases involving issues of adequate search for work and refusal cases involving prevailing wage or travel distance.

7. The ALJ decision relies upon evidence which, as described in the decision, is clearly hearsay, or the claimant's statement submitted on appeal includes a contention that the ALJ believed hearsay evidence from the employer in reaching the decision.

8. The initial determination relates to a 'reasonable assurance' issue involving substitute teachers or other per diem educational employees.

9. The ALJ decision states that the claimant's testimony is not credible in comparison with that of the employer's, and there is no explanation for that credibility determination.

1

10. The ALJ decision does not make specific findings of fact that are integral to a ruling on the issue in the case. For example, the decision concerns misconduct and the decision does not contain findings of the claimant's behavior that could be determined to be misconduct. For another example, the decision concerns refusal of new work and the decision does not contain findings of an offer and a refusal.

ATTACHMENT A  -  Re-Review Order entered on December 19, 1997 with appendices 1, 2 and 4
intentionally omitted as not relevant to the Modification Stipulation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------

NIDIA BARCIA, et al.,

            Plaintiffs,

       -against-                       79 Civ. 5831 (RLC)

LOUIS SITKIN, et al.,

            Defendants.

----------------------------------------------------------------      STIPULATION AND ORDER

MUNICIPAL LABOR COMMITTEE, et al.,

            Plaintiffs,

       -against-                       79 Civ. 5899 (RLC)

LOUIS SITKIN, et al.,

            Defendants.

----------------------------------------------------------------

WHEREAS, the parties entered into a Consent Decree, So Ordered by the Court on June 6, 1983 ("Consent Decree"); and

WHEREAS, the Consent Decree establishes a method of file review through the completion of checklists (such checklists are appended to the Consent Decree as Appendix "E" and Appendix "F") as a way to ensure that certain Consent Decree provisions have been adequately protected for the parties; and

WHEREAS, in an Opinion and Order dated September 8, 1994, the Court directed the defendant Appeal Board to again review a series of unemployment insurance benefit cases which had been decided adverse to the claimants and in so doing, to then apply a particular standard in the Appeal Board's checklist analysis of such cases; and

WHEREAS, the defendants have appealed that part of the Court's Order of September 8, 1994 which deals with this issue to the United States Circuit Court of Appeals for the Second Circuit and the plaintiffs have cross-appealed on the same issue; and

WHEREAS, the parties have had several meetings to discuss this issue and to attempt to settle the scope, time periods, and number of cases that would be subject to the re-review ordered by the Court and thereby obviate the need for their appeals on this issue; and

WHEREAS, the parties have agreed on the process to be used in the re-review of certain cases, and have agreed upon a sampling method to determine the scope of the re-review process; and

WHEREAS, the parties have agreed upon a modified checklist to be used in the process of re-reviewing cases as ordered by the Court and clarified by agreement of the parties; and

WHEREAS, the parties have agreed upon guidelines to indicate how the court ordered standard would apply to the checklist agreed to for the re-review process; and

WHEREAS, these guidelines: (1) set forth the Appeal Board's understanding as to what procedural rights are intended to be safeguarded through the application of the checklist, (2) give illustrative examples of what does and does not constitute a violation of the various checklist items, and (3) indicate the nature of the remedial action to be taken when a violation may have adversely affected the rights of any party in an unemployment insurance case; and

WHEREAS, the defendant Appeal Board has represented that its ability to do any re-review of cases is contingent upon the degree to which funding can be obtained from appropriate sources, primarily the United States Department of Labor (hereinafter referred to as U.S.D.O.L.); and

Re-review stipulation, page 2

WHEREAS, the defendant Department of Labor has represented that it has discussed with U.S.D.O.L. the circumstances under which such funding would be forthcoming; and

WHEREAS, defendant Department of Labor represented that it has received certain preliminary indications that funding would be available for the purpose of the re-review as directed by the Court or as agreed to by the parties; and

WHEREAS, the parties have further agreed that the re-review process will consist of a checklist analysis of the unemployment insurance hearing record [The "record" having been defined in Consent Decree paragraph 14, and later revised by agreement of the parties to be the definition set forth for the record on appeal in the current Board Rules (12 NYCRR 460.7)]; and

WHEREAS, the parties have further agreed that the re-review process will not include a reconsideration of the merits of the claim for unemployment insurance benefits unless and until a checklist violation has been found which may have adversely impacted on the rights of a party, after application of the guidelines which the parties have agreed to for interpreting the checklist items; and

WHEREAS, the Appeal Board continues to have separate jurisdiction to reopen and reconsider, under New York Labor Law § 534, any case even if it does not contain a checklist violation, such jurisdiction not being limited by this re-review process;

NOW, THEREFORE, IT IS STIPULATED AND AGREED by and between the undersigned counsel for the parties to this action as follows:

1.    The Appeal Board has two distinct groups of cases that are subject to the Court's directive in the Opinion and Order dated September 8, 1994 and clarified by this agreement of the parties, related to the re-review of cases. As used in this Stipulation and Order, the term

"prospective cases" shall refer to cases appealed to the Board and decided after July 11, 1983 when the Consent Decree was implemented. These prospective cases currently have case numbers ranging from approximately A.B. 397,923 and higher through about A.B. 480,000 as of November 30, 1997. As used in this Stipulation and Order, the term "class member cases" shall refer to cases reopened for reconsideration pursuant to paragraph 63 of the Consent Decree. These cases have been numbered in the 900,000 series of case numbers.

2.      The checklist annexed hereto as Appendix "1" is the checklist for the re-review of prospective unemployment insurance benefit cases, except for the test sample cases, as specified in paragraph 11 below.

3.      The guidelines annexed hereto as Appendix "3" are to aid and assist in determining whether a violation of a checklist item has occurred and whether any remedial action is required in a prospective case.

4.      The checklist annexed hereto as Appendix "2" is established as the checklist for the re-review of class member unemployment insurance benefit cases.

5.      The guidelines annexed hereto as Appendix "4" are to aid and assist in determining whether a violation of a checklist item has occurred and whether any remedial action is required in a class member case.

6.      The items on the revised checklists shall be reviewed periodically by the parties, and may be changed, added to, modified or refined, as experience may indicate to be necessary or advisable. The changes referred to may be made, without court approval, upon the consent and agreement of the parties. In the event that the parties cannot agree upon a proposed change to the checklist, they shall use the dispute resolution procedure provided for in this Stipulation and Order.

7.      Both sets of guidelines shall be reviewed periodically by the parties. The plaintiffs in this matter may propose revisions to the guidelines as they deem appropriate. The Appeal Board must consider such proposals and, within sixty (60) days, advise lead counsel for plaintiffs as to whether the Appeal Board will adopt the proposals. Regardless of whether any plaintiff proposal(s) may be made, the Appeal Board may change either set of guidelines as the Appeal Board deems appropriate, without Court approval, in accordance with Paragraph 53 of the Consent Decree. Any such change in the guidelines shall not require retroactive application to cases that have already received the re-review ordered by the Court and clarified by this agreement of the parties.

8.      The use of these agreed upon checklists and guidelines, as provided below, shall constitute full compliance by the Appeal Board with the directives of the Court regarding the re-review of cases.

## SAMPLING METHODS

9.      The defendant Appeal Board shall first conduct a re-review of a sample of certain prospective case decisions (these cases are hereinafter referred to as the "sample cases") mailed during calendar year 1994 (hereinafter referred to as the "sample period") to determine the accuracy with which the Appeal Board identified checklist violations when those prospective cases were originally decided by the Appeal Board.

10.     The sample cases shall consist of all claimant benefit cases decided, in whole or in part, adverse to claimants. For purposes of the selection of the sample cases, the sample shall not include cases decided on technical grounds (e.g., timeliness of the appeal to the Board, the standing of a party to appeal, or the withdrawal of an appeal ), except those cases implicating

paragraphs 28 - 30 of the Consent Decree . The sample cases also shall not include cases which were remanded by the Board for a new hearing and decision by an Administrative Law Judge, whether because of lost transcripts, due process violations, or Board option to expand the record. The sample cases shall not include any case decided within the sampling period if that case was subsequently reopened by the Appeal Board and decided in a period of time after the sampling period. The sample cases shall include any claimant benefit case related to the status of the claimant as an employee or an independent contractor.

11.      The Appeal Board shall select the sample cases. Upon the completion of the selection process, the Appeal Board shall submit a written report to the lead counsel for plaintiffs describing the methodology used, the final number of cases in the sample, the number of cases excluded from the sample (identified by the categories described in the prior paragraph), and a reconciliation with the number of cases reported to the U.S.D.O.L. as mailed for funding purposes during the sample year. The reconciliation numbers are to be within ten percent (10%) of the number of decisions reported to the U.S.D.O.L. as mailed during the sampling period.

12.      The Appeal Board shall use the originally completed checklists to determine: (1) how many of such checklists reported one or more checklist violations and (2) how many "major" violations[1] were reported. These numbers shall be submitted to the lead counsel for plaintiffs in advance, on a monthly basis, so that all parties will be aware of the number of cases with one or more violations in the sample and the number of "major" violations , regardless of whether a remedy was required for the violation. If lead counsel for plaintiffs questions the

---

[1] A "major" checklist violation shall be defined as a violation of "E" Checklist item numbers 3, 4, 10 (a),(b) and (c), 11, 12, 14, 15, 16 (a), (b) and (c), 17 (a) and (b), 18, 19, 20, 21, 22, 24, 26 and 27.

accuracy of this report, copies of the original checklists shall be made available for inspection by lead counsel.

13.    For the sample cases, the Appeal Board shall remove from the case folder, prior to the re-review, any previously completed checklists, notes, summaries of appeal, or similar documents that might contain information on the number or type of checklist violations that may have been identified during the original review of the cases.

14.    The Appeal Board shall then conduct a re-review of the sample cases. In the sample re-review process, the checklist to be completed is the checklist which had originally been established as Appendix "E" to the Consent Decree. In determining whether there was a violation of the "E" checklist, the Appeal Board shall use the guidelines which the Appeal Board has recently established for the now-revised "E" checklist to the extent that items on the original "E" checklist match the content of the now-revised "E" checklist.

15.    At least once each month, while the sample cases are being reviewed by the Appeal Board, the Appeal Board shall make a report to the plaintiffs including: (1) the number of cases reviewed; (2) the number of cases found to contain one or more checklist violations; and (3) the number of "major" violations. This report shall include a copy (either a hard copy or computer disk containing such copies) of each checklist completed by the Appeal Board as part of the re-review process and a copy of the original checklist completed for that case. Lead counsel for plaintiffs may inspect up to ten percent (10 %) of these cases each month, provided that the total number of cases made available to lead counsel for inspection during any twelve (12) month "inspection" period shall not exceed 600 case files and further providing that the plaintiffs complete the review of the requested number of cases within sixty (60) days of the date such files are made available to lead counsel by the Appeal Board. Files not reviewed by lead

counsel within sixty (60) days shall be returned to the Appeal Board, but shall nonetheless be counted as cases made available for inspection by plaintiffs' counsel . The actual percentage of re-reviewed cases available for plaintiffs' inspection in different months may be a topic for periodical review by the parties, depending on the pace of the re-review, so that the inspections by plaintiffs are distributed throughout the year or years of the re-review of the sample cases.

16.    At the start of the re-review process for the sample cases, the Appeal Board shall define, on notice to lead counsel for plaintiffs, how the case files for plaintiffs' inspection, as provided in the prior paragraph, shall be determined. The files must be selected in a manner designed to insure that the inspection cases are random and representative of the sample.  Plaintiffs' counsel may not request the inspection of any individual case file, outside of the randomly selected cases.

17.    Disagreements between the parties about whether the re-review checklist was properly completed  shall be subject to the notification, consultation and mediation provisions of paragraphs 53 and 54 of the Consent Decree.

18.    At the end of the re-review of the sample cases, the parties shall calculate (1) the number of cases with one or more checklist violations and (2) the aggregate number of "major" checklist violations. Those numbers shall then be compared to the numbers derived from the original checklists prepared in the sample cases. If the difference between the original and "re-review" numbers of cases with one or more checklist violations is less than 7.5 percentage points (higher or lower[2]), or the difference between the original and "re-review" aggregate numbers of "major" violations is less than 5 percentage points (higher or lower), then the

---

[2] For example, if the original checklist analysis was  conducted of 10,000 cases and 5,000 were found to have one or more violations, then "re-review" should reveal no more than 5,374 and no less than 4,625.

provisions of paragraph 24 below shall be followed with regard to the re-review of all prospective cases decided by the Appeal Board from January 1, 1990 through the date on which the Appeal Board implements the provisions of a separate Stipulation and Order related to the establishment of revised checklists and Appeal Board guidelines for determining whether a checklist item was violated. If the difference is 7.5 percentage points or more, as to the number of cases with one or more violations, or is 5 percentage points or more, as to the aggregate number of "major" violations, then the provisions of paragraph 25 below shall be followed with regard to the re-review of all prospective cases decided by the Appeal Board from January 1, 1990 through the date on which the Appeal Board implements the provisions of a separate Stipulation and Order related to the establishment of revised checklists and Appeal Board guidelines for determining whether a checklist item was violated.

19.    If the checklist violations identified in the sample cases may have affected the outcome of the case (within the Appeal Board's guidelines as set in paragraph 14 above), the Appeal Board shall take whatever steps are necessary and appropriate for it to reconsider the merits of the unemployment insurance benefit claim using the law in effect for such situations at the time of the re-review, unless any change in a statute was limited to be effective after the original claim for unemployment insurance benefits in the individual cases being re-reviewed. In any case where the Appeal Board provides a remedy for a checklist violation, the Remand Order, if any, and the final decision shall be provided to plaintiffs' counsel and shall each indicate that such order or decision relates to a sample case. If the checklist violation(s) did not affect the outcome of the case within the appropriate guidelines, the Appeal Board may terminate its re-review of the case at that point and is not required to take any further action on the case.

20.    Regardless of which re-review provisions are implemented based on the comparison provided in paragraph 18 above, the sample cases will not receive any further re-review. The sampling methodology shall constitute full compliance with that part of the Court's order which required a re-opening or re-review of the sample period cases.

## RE-REVIEW CASES AND PROCESS

21.    The cases subject to re-review as directed by the Court and hereby clarified by the parties shall be all claimant benefit cases, provided the cases meet the criteria used to define the sample cases as set forth in paragraph 10 above, decided by the Appeal Board during the time periods defined in the two following paragraphs.

22.    For prospective cases, the time period for which the re-review shall be conducted is all such cases decided by the Appeal Board after January 1, 1990 through the date on which the Appeal Board implements the provisions of a separate Stipulation and Order related to the establishment of revised checklists and Appeal Board guidelines for determining whether a checklist item was violated.

23.    For class member cases, the time period for which the re-review shall be conducted is all such cases decided by the Appeal Board after January 1, 1989 through the date prior to the day on which the Appeal Board shall have implemented the provisions of a separate Stipulation and Order related to the establishment of revised checklists and Appeal Board guidelines for determining whether a checklist item was violated. However, in the event that the mailing to the class member claimants required by the May 2, 1997 Stipulation and Order results in more than 7,000 of such class member claimants either (a) indicating that they do not wish to

have their cases re-opened or (b) cannot be located, after the procedures established in the parties' prior stipulation regarding locator services have been complied with, then the Appeal Board shall additionally re-review those class member classes decided between January 1, 1988 and December 31, 1988.

24.    For prospective cases as defined in paragraphs 1, 21 and 22 above, the re-review itself shall consist of a checklist analysis of cases in which the original review identified one or more checklist violations in the case, regardless of whether the identified violation(s) required remedial action. During the re-review, each identified case shall receive an analysis of the record using the checklist that is Appendix "1" of this Stipulation and Order. If the violations of the Appendix "1" checklist may have affected the outcome of the case within the Appeal Board's guidelines as set forth in Appendix "3", the Appeal Board shall take whatever steps are necessary and appropriate for it to reconsider the merits of the unemployment insurance benefit claim using the law then in effect for such situations, unless any change in a statute was limited to be effective for times after the original claim for unemployment insurance benefits in the individual cases being re-reviewed. If the Appendix "1" checklist violation(s) did not affect the outcome of the case within the Appendix "3" guidelines, the Appeal Board may terminate its re-review of the case at that point and is not required to take any further action on the case.

25.    In the event that the analysis of the sample cases shows a 7.5 percentage point difference between the number of cases with one or more checklist violations or a 5 percentage point difference in the aggregate number of "major" violations when comparing those originally identified to those identified upon re-review, as set forth in paragraph 18 above, the re-review process shall be in two segments. If the prospective case, as defined in paragraphs 1, 21 and 22 above, was originally decided by the Appeal Board after January 1, 1990 and prior to January 1,

1995, such prospective cases, decided adverse to claimants where no remedy has previously been accorded, will receive an analysis using the Appendix "1" checklist and the Appendix "3" guidelines. For cases decided, adverse to claimants where no remedy has been provided ,from January 1, 1995 through the date of implementation of the guidelines, only prospective cases with a previously identified checklist violation and those involving Spanish surnamed claimants, where the file indicates that translation services were used or was necessary and those cases in which Paragraph 9 of the Consent Decree is implicated shall receive an analysis using the Appendix "1" checklist and the Appendix "3" guidelines.

26.     For class member cases as defined in paragraphs 1, 21 and 23 above, the re-review itself shall consist of an analysis of the record using the checklist that is Appendix "2" of this Stipulation and Order. If the violations of the Appendix "2" checklist may have affected the outcome of the case within the Appeal Board's guidelines as set forth in Appendix "4", the Appeal Board shall take whatever steps are necessary and appropriate for it to reconsider the merits of the unemployment insurance benefit claim using the law then in effect for such situations, unless any change in a statute was limited to be effective for times after the original claim for unemployment insurance benefits in the individual cases being re-reviewed. If the Appendix "2" checklist violation(s) did not affect the outcome of the case within the "Appendix 4" guidelines, the Appeal Board may terminate its re-review of the case at that point and is not required to take any further action on the case.  If the original checklist has an item marked which corresponds to an Appendix "2" checklist item, and the re-review does not result in the corresponding "2" checklist item being marked, the reviewer shall provide an explanation for the disparity.

27.     The defendant Appeal Board shall undertake a re-review of the case files as it has been directed by the Court and clarified by this agreement of the parties. This re-review shall be

limited to a determination of whether there were any violations of the appropriate checklist and to an analysis of the impact of such checklist violations on the rights of the parties using the "may have affected the outcome" standard. Nothing herein requires that the Appeal Board conduct a merits review of those cases being re-reviewed. Nothing herein prohibits the Appeal Board from formally reopening any individual cases on the Appeal Board's own motion to allow the Appeal Board to conduct a merits review if the Appeal Board determines to conduct a merits review of any case.

28.    At least once each month while this re-review process is being completed, the Appeal Board shall make a report to the plaintiffs as to the number of cases reviewed. This report shall include a "hard" copy or computer generated database record copy of each checklist completed by the Appeal Board as part of the re-review process. Lead counsel for plaintiffs may inspect up to ten percent (10 %) of these cases each month, provided that the total number of cases inspected during any twelve (12) month period shall not exceed 450 case files  The actual percentage of re-reviewed cases available for plaintiffs inspection in different months may be a topic for periodical review by the parties depending on the pace of the re-review, so that the inspections by plaintiffs are distributed throughout the year or years of the re-review of the designated cases.

29. In the event that the parties are unable to resolve disputes regarding the implementation or interpretation of any part of this Stipulation and Order, including, but not limited to, changes, additions or modifications to the checklists, the parties shall comply with the following procedures: (a) the parties are to first comply with paragraph 53 of the Consent Decree by meeting in an effort to informally resolve their differences; (b) if informal discussions do not result in a resolution, the parties shall mediate their dispute pursuant to paragraph 54 of the

Consent Decree; and (c) if mediation does not serve to resolve the dispute, the parties have the right, pursuant to paragraph 69 of the Consent Decree to apply to the Court for a ruling on the dispute. For the purposes of resolving a dispute regarding proposed changes, additions or modifications to the checklists, the parties specifically agree that the Court render its decision in consideration of the parties' need to maintain flexibility in changes, additions, or modifications in order to serve the future needs, reflect changes in the ways in which the Appeal Board operates, or better meet the intent and goals of the Consent Decree.

## FUNDING CONTINGENCIES

30.    If any budgetary or funding problems interfere with or limit the ability of the defendant Appeal Board to conduct the re-review agreed to in this stipulation, and as directed by the Court and clarified by this agreement of the parties, the defendant Department of Labor and the defendant Appeal Board shall notify the lead counsel for plaintiffs within thirty (30) days of when the defendants become aware of such difficulty. During the next thirty (30) days, the parties shall discuss the situation and attempt to resolve the matter. If there is no resolution of the problem, the Court shall be notified, through the filing of appropriate motions, no later than the expiration of ninety (90) days from the date defendants became aware of the problem. The parties recognize and agree that such a situation would not form the basis for a contempt motion against either defendant Appeal Board or defendant Department of Labor, but would form the basis of an application to modify the stipulation and order of the Court and/or to seek such further relief as may be necessary to carry out the objectives and procedures set forth in this stipulation.

Dated: New York, New York
December 18 , 1997

RAFF & BECKER, LLP

By: _David Raff_
DAVID RAFF (D.R. 4299)
Attorney for Plaintiffs
59 John Street, 6th Floor
New York, New York 10038
(212) 732-5400


DENNIS C. VACCO
New York State Attorney General


By: _Thomas_
THOMAS R. SOFIELD (TS 2743)
Assistant Attorney General
Attorney for Defendants
120 Broadway
New York, New York 10271
(212) 416-8650


SO ORDERED:

_Robert L. Carter_
ROBERT L. CARTER
U.S.D.J.

December 19 , 1997


Re-review stipulation, page 15

APPENDIX 1    APPENDIX 2    APPENDIX 3    APPENDIX 4

STATE OF NEW YORK
UNEMPLOYMENT INSURANCE APPEAL BOARD

**GUIDELINES FOR APPLYING THE "E" CHECKLIST
AND REMEDIATION STANDARDS**

I.    GENERAL PRINCIPLES

Paragraph 39 of the Consent Judgment in *MLC v. Sitkin* (79 Civ. 5899) requires the Unemployment Insurance Appeal Board to complete an "E" checklist on every prospective Appeal Board case. Paragraph 57 of the Consent Judgment provides that the Appeal Board shall have the exclusive right to apply the checklist.

When a case is reviewed by staff and by the Members of the Appeal Board, they are required to determine if any item on the checklist has been violated. If there was a violation, it is to be marked and explained in the context of the entire record. If the rights of the parties have been adequately protected, the explanation portion of the form will identify how this protection was achieved. If the rights of any party were not adequately protected with regard to specific checklist items, the explanation portion of the checklist will set forth the nature of the violation and will identify the remedial action being taken.

Some of the items on the checklist were worded in absolute terms such as whether the file contains a certain piece of paper or whether a certain event did or did not occur. Other checklist items require an evaluation and the exercise of judicial reasoning to determine if there was a violation. In addition, the waiver guidelines, annexed hereto as "Attachment A" should be utilized when appropriate.

II.    REMEDIAL STANDARD

In weighing the impact of any violation, a variety of factors must be considered. It is not possible to outline all such factors or to establish the value or importance of one factor over another. Because the weighing process must be specific to the content of the particular record, it is not possible to define exact standards of how to test the potential impact of any violation or series of violations.

The standard to be applied in determining whether a checklist violation warrants remedial relief is whether an impartial adjudicator, giving the benefit of the doubt to the party whose rights have been violated, would conclude that the violation may have affected the outcome of the case.

III.    SPECIFIC APPLICATION OF VIOLATION GUIDELINES

Under each checklist item listed below are a series of guidelines to assist the ALJ and Board Member in the application of the checklist principle to the case under review. These

guidelines are not intended to be all-inclusive, but rather, illustrative of the kinds of considerations the reviewer should take into account when completing a checklist.

If any of these guidelines are worded in terms of one party or another, it is unintentional. It must be kept in mind that the application of these guidelines and the reviewer's checklist analysis is to be the same for all parties to the proceedings.

These guidelines attempt to reflect the principles which underlie the checklist and are an indication of how the Appeal Board has determined that hearings and appeals should be conducted. Therefore, these principles should also be considered as a guide for the proper conduct of lower authority hearings by Administrative Law Judges.

In connection with its review of other cases, the Unemployment Insurance Appeal Board prepares other checklists. The specific guidelines set forth below for the application of the "E" checklist can be a guide to interpreting the items on other checklists. The reviewer must, however, be aware that some of the checklist items are worded differently from the comparable items on the "E" checklist. Thus, not all examples can be applied equally to the other checklists.

IV.    SPECIFIC APPLICATION PRINCIPLES FOR REMEDIAL GUIDELINES

A remedy is required whenever a violation occurs which may impact upon a material fact at issue, or whenever a violation occurs which may impact upon a credibility determination by the adjudicator which is necessary in order to render a fair, just and informed decision. Conversely, a remedy is not required when the violation is merely technical, or, after giving the affected party the benefit of the doubt, the violation could not have any effect upon a material fact or a credibility determination.

The type of remedy to be applied will depend upon what will cure the violation. Remedial action includes, but is not limited to: vacatur of the decision and a de novo hearing; remand or Board hearing to provide the specific right(s) which were denied; reversal of the decision; striking improperly admitted testimony or documents and rendering a decision without consideration of the same; or issuing a "long form" or "short form" decision with an "except clause" to explain the decision or to explain why no further remedy is required.

**Checklist item 1.** · **The file, at the time of the Appeal Board review, does not contain a notice of hearing, addressed to all necessary parties and their representatives, which sets forth the issues to be decided.**

*Violation Guidelines*
    1. The parties have a right to notice of the issues and an opportunity to prepare.
    2. The notice is to be sent to the last known address of each party.
    3. The notice is to be addressed to all representatives known at the time the notice of hearing is mailed.
    4. The notice should list the phrases of all issues of law involved, including timeliness, applications to reopen prior cases, and the legal issue involved in an employer's objection to entitlement.

Appendix 3, page 2

5. If there is no file copy, it is permissible to make a copy for the file from the notice sent to a party.

6. Adequate notice can be inferred from submissions by the parties or from local office documentation of contacts with a party, provided the documents are properly introduced into the record. If the notice of hearing was missing from the file but the ALJ obtained a copy of the notice from a party, properly made the notice part of the record, and elicited testimony showing that all parties received the notice, there would be no violation and no remedy would be required.

7. The parties have a right to request an adjournment when they are unprepared to address an issue that was not listed on the notice of hearing.

8. If the case is on appeal to the Board from a decision issued following a remand to hear and determine, the only notices in issue would be those for the remand hearing, not all notices on the original case.

*Remedial Guidelines*

Where the record shows that a party (who will be adversely affected in any way by the Board decision) did not receive notice, and the ALJ did not take steps needed to assure notice, a remedy must be granted. Technical violations which are cured by the ALJ do not require a remedy.

Checklist item 2.    **The file, at the time of the Appeal Board review, does not contain a copy of each initial determination.**

*Violation Guidelines*

1. The initial determination is a jurisdictional prerequisite to an ALJ's ruling. Consequently, it must be part of the file.[1]

2. A Spanish language copy of the determination is needed for a Spanish speaking party. If there is none, the adequacy of notice issues from checklist item 1 are to be applied.

3. The ALJ may obtain a copy of the initial determination from a party, ASO or other DOL office.

4. A computer generated copy of the initial determination is an acceptable copy. However, this would not apply to cases involving Spanish speaking parties; those cases would still require Spanish language copies.

5. If the initial determination was missing from the file, but if the ALJ obtained a copy of the determination from a party, properly made the determination part of the record, and elicited testimony showing that all parties received the notice, there would be no violation and no remedy would be required.

*Remedial Guidelines*

If the hearing involves a Spanish speaking claimant, a Spanish copy must also be in the file. If the appeal file lacks the initial determination, remedial action must be taken. However, if

---

[1]This guideline should be read in conjunction with Paragraph 9 of the Consent Judgment and the MLC stipulation entered into by the Department of Labor wherein the Department agreed to provide written translations of the handwritten sections of the initial determinations to claimants requiring Spanish language assistance. See, Stipulation and Order dated August 11, 1997, pg 3.

it was missing from the hearing file, and the ALJ took appropriate action (see 5, above), no remedial action is required.

**Checklist item 3.   The initial determination or employer's objection did not state the legal issues or factual incidents with sufficient particularity.**

*Violation Guidelines*
　　1.  The determination/objection should state a basic description of the events in issue and, where necessary, the date and time.
　　2.  Conclusionary language alone in the determination/objection is insufficient factual information. For example, "failure to demonstrate attachment to the labor market" would need additional information to put parties on notice of the steps necessary to demonstrate the attachment.
　　3.  Primarily in separation and refusal cases, the ALJ is to use the theory of the "straw that broke the camel's back" to define the controlling event. If this is different from the language of the determination/objection, the guidelines under checklist item 4 should be utilized..
　　4.  Issues can be similar but distinct. An absence may be different from a lateness. A driver who is fired for losing a license might be a voluntary quit/provoked discharge situation or one of misconduct.
　　5.  A willful misrepresentation determination must include an allegation that claimant knew or should have known of the falsity of the certification or statement given. The determination must specify the certification in issue.
　　6.  If the issue is failure to follow certain employer rules or procedures, those rules or procedures should be mentioned or somehow described in the determination/objection.
　　7.  Considered judgment is necessary when the basis of the determination/objection seems to better fit another legal issue. For example, language might be used that a claimant evinced an intent to quit when claimant failed to follow a directive, or alternately that claimant was fired for failing to follow the directive. The factual incident is usually controlling-not the statutory section cited (but see checklist item 4).
　　8.  If the determination/objection is vague, it is permissible to proceed to a specific basis if the provisions in checklist item 4 have been satisfied.

*Remedial Guidelines*
　　Adequate notice of the legal and factual issues in contest is a fundamental right. If the notice is inadequate, in that a party did not have a full opportunity to prepare to meet a legal issue or respond to a factual allegation, a remedy must be afforded. The term "legal issue" is defined as "the legal basis for the issuance of the initial determination". A "factual allegation" is defined as "a sufficient statement of fact to inform the party of the factual basis for the initial determination". Remedial relief is not required where the record is clear that the claimant had the necessary knowledge to proceed, even if the notice is not adequate. For example, although the notice failed to state the dates on which the incidents occurred, the summary of interview shows the claimant knew the dates involved, and was capable of responding to the incidents. Conversely, if claimant did not know the dates and, therefore, was not able to prepare for the hearing, the ALJ's failure to offer an adjournment would require a remedy.

Appendix  3, page 4

Checklist item 4.    The judge or the Board admitted evidence which would change the basis of the determination, without a showing of good cause, or failed to state his reason on the record, or did not inform the parties that he would accept the evidence, or did not inform the parties of their rights, or did not offer an adjournment.

*Violation Guidelines*

1.  Going from a vague or general determination/objection to something specific constitutes a change and will create issues of adequate notice.

2.  The factual incident is the important matter. The name of the legal issue is a secondary concern. However, the parties still have the right to be told if the legal issue is being changed.

3.  It is the usual practice that separation issues of voluntary quit and misconduct can be interchanged on notice to the parties so long as it seems that the underlying facts are in the same continuum of events. Except in rare situations, separation issues can not be changed into refusal of employment issues. Likewise, there should be no change from disqualifications to non-entitlements or to ineligibilities or vice versa.

4. If additional legal issues are raised at the hearing, they are to be referred to the local unemployment insurance office for investigation and determination unless the file indicates that the local office was already aware of the matter. If the local office was aware of the matter, no referral is made.

5.  There is a difference between a defense offered by a party and a changed basis. A defense, for example, would relate to the reason advanced for a lateness or absence. If a claimant gives a different reason at the hearing than the reason given to the employer or at the local office, that difference may be a factor in assessing credibility but it does not represent a change from the basis of separation due to lateness or absence. However, if new reasons are given for why a claimant quit, that may be a change in the basis giving rise to procedural steps addressed in this checklist item.

6.  There must be good cause to excuse a party for not putting forth, at a time earlier than the hearing, the real factual incident that is to be litigated. The factual incident should have been supplied to the local office for its evaluation before the initial determination was issued. In objection cases, the factual incident must be described in the letter. Other litigation matters, private arrangements between the employer and the claimant or the union, and a variety of other reasons may be given as to why the real factual incident was not revealed. Those business or personal choices do not automatically constitute good cause to excuse the delay in revealing the real factual incident.

7.  If, before the hearing begins, an employer's objection is vague on the specific factual incident involved, the hearing record must be developed with regard to what steps were taken by various Department of Labor offices to obtain greater specificity before the case was sent for calendaring. If the Department offices put the employer on notice that specificity was required by the Board Rule 461.1(b) but specificity was not forthcoming, that factor must be considered by the ALJ before determining if there is good cause to now change the basis to some specific incident.

8.  To change a factual basis, several components must be considered. Unless there is compliance with each aspect, a violation has occurred. The components include:

Appendix 3, page 5

a) showing of good cause;
b) ALJ must state reason on record for changing factual basis;
c) ALJ must inform parties that the ALJ will accept the new evidence;
d) ALJ must inform parties of their rights; and
e) ALJ must offer opportunity to request an adjournment.

*Note: The ALJ should be careful not to encourage or discourage the parties'
decision to accept or reject the offered adjournment, either by words or demeanor.*

*Remedial Guidelines*

An ALJ cannot give any consideration to new evidence on factual matters not raised in
the initial determination or in the employer objection, unless the procedural steps enumerated
have been fully observed. Thus, for example, if the notice of determination denied benefits on the
ground of misconduct because claimant refused to carry out a supervisor's instruction to move
boxes in a warehouse, and, at the hearing, the employer contends that the claimant was
discharged because he was caught sleeping on the job, the ALJ may not proceed with evidence
on that new ground without complying with the five steps enumerated in this checklist item; if
the ALJ does proceed under these circumstances, a remedy would normally be required.

If there is specific testimonial or documentary evidence in the record to show that the
party against whom new evidence was introduced was fully prepared to address the issue, the
remedy may only require an explanation in the decision.

A remedy would not be required for a technical violation. For example, if the ALJ
complies with all of the other conditions of this item, and the record is clear that the parties fully
understood that the ALJ would be considering the new issue, failure to inform the parties that the
new evidence is accepted would not require a remedy.

**Checklist item 5.    In employer objection cases, the ALJ did not enter a default when the employer failed to
appear.**

*Violation Guidelines*

1. If the employer requested the hearing, the employer must appear and proceed. Other-
wise, the employer is in default. It is a checklist violation when a default decision is not issued in
this situation.

*Remedial Guidelines*

This item requires a remedy anytime it is violated.

**Checklist item 6.    The judge did not accord the parties the opportunity for an adjournment in cases
where the representative of the Commissioner of Labor made a new or revised determination without notice
to the parties.**

*Violation Guidelines*

1. The violation occurs only if the new or revised determination is issued by the COL
representative without notice to the parties.

Appendix 3, page 6

2. If an initial determination is issued or revised after the notice of hearing has been mailed but before the hearing is held, and if the initial determination contains language to the effect that "this will be considered at your hearing", the ALJ can consider the issue without it being a violation of this checklist item. If the new or revised determination was not listed on the Notice of Hearing, consideration of the new or revised determination would be a violation, unless an adjournment was offered.

3. If a party to the hearing advises the ALJ that other initial determinations are outstanding but were not on the notice of hearing, the ALJ should consider those determinations only if the local office had clearly intended that they be included at the hearing (e.g. the initial, revised or additional determination contains language to the effect that "this will be considered at your hearing") or the determination is directly related to an issue properly before the ALJ (e.g. an overpayment associated with the underlying disqualification, non-entitlement or ineligibility). Otherwise, the ALJ must not consider them and should advise the parties on the record to contact the local office as soon as possible to protect that party's right to request a hearing.

4. It is not a violation if the ALJ fails to offer an adjournment when a new or revised determination is raised at the hearing if the ALJ refuses to consider the new or revised determination.

_Remedial Guidelines_

This item requires a remedy anytime it is violated, unless there is an identity of issues or material facts so that the parties are not surprised by the new determination.
_Best Practice: An overpayment initial determination can be added without the need for the ALJ to offer the claimant an opportunity to request an adjournment. However an adjournment must then be granted if the claimant disagrees with the amount or the calculation of the overpayment._

**Checklist item 7.   The ALJ or the Board did not make the statement required by Paragraph 13 of the Consent Judgment in _Pugh v. Ross, et al._**

_Violation Guidelines_

1. The statement must be given at the start of the first hearing. If the hearing was adjourned, the statement need not be repeated at subsequent hearings so long as there are not parties or representatives then present who were absent from the original hearing.

2. The statement need not be given if the hearing is "record only" and is being adjourned or closed for some reason.

3. The right to make a closing statement is not a part of the statement required.

4. The recitation must include the legal issues. It is not necessary to recite the factual basis of the initial determination or employer objection.

5. The statement need not include reference to cross-examination if only one party is present.

6. If a party arrives late, the statement must be repeated for the late party. Otherwise there is a violation.

7. If the translator has not been sworn and has not begun translating, the statement has not been given to the party needing that translation assistance.

Appendix 3, page 7

8. Failure to include a needed part of the statement is a violation even if the specific right was protected at the hearing.

*Remedial Guidelines*
No remedy is required if the rights listed in the Pugh statement were, in fact, given.

Checklist item 8.    **The ALJ or the Board did not render a decision on all issues necessary to be decided.**

*Violation Guidelines*
1. A decision must be rendered on all necessary legal issues. A necessary legal issue is one which could render the others academic. For example, sustaining a disqualification makes an ineligibility for a later period of time academic unless there is some indication that the disqualification has been broken. The same is not true if the ineligibility is effective before the disqualification.
2. It is not a violation if the ALJ or Board fails to include in the decision points that had been included in the basis for the initial determination or for the employer's objection.

*Remedial Guidelines*
Where it is necessary to decide an issue, a remedy must be given. The Board may decide any issue left undecided by the ALJ so long as there is a sufficient record on the issue. This is an instance where a long form decision may be the only remedy necessary.

Checklist item 9.    **The file does not contain all documents upon which the initial determinations were based.**

*Violation Guidelines*
1. This violation most likely occurs when a willful misrepresentation is alleged based on some written document submitted to the local office and the document is not included in the file.
2. Some document would also have to be in the file to show the amount of a recoverable overpayment. The document could be a benefit ledger transcript or a benefit control record or some handwritten indication of the overpayment amount.
3. The ALJ may contact ASO or other DOL office to obtain the underlying jurisdictional documents. The lack of the document, after an attempt to obtain it, absent a clear admission against interest by a party, would require that the initial determination be overruled for lack of proof.

*Remedial Guidelines*
If the ALJ obtains such documents during the course of the hearing, the documents are to be made a part of the record after the parties have received notice and have been confronted with the documents. It is possible that a party may admit to certain facts contained in an initial determination (such as the amount of the recoverable overpayment) and then the underlying document would not be needed. Care must be taken that the admission is to the actual determination and is not to some general concept (for example, "I received benefits" is not sufficient to establish the exact dollar amount of an overpayment). Thus, a remedy is only required for this item if the ALJ

Appendix 3, page 8

has not cured the problem in accord with the violation guidelines for this item, or if, upon obtaining those documents, they were not properly made part of the record.

Checklist item 10. (a)   **The ALJ or the Board did not confront the parties with documents and reports considered or relied upon to decide the case.**

*Violation Guidelines*
 1.  Considered is defined as "read by the ALJ and used as a basis for questioning". Relied upon is defined as "(i) forms the basis of the decision or, (ii) any finding of fact or conclusion of law therein". These definitions limit the violation to ALJ actions during the hearing or in the decision.
 2.  It is not a violation if a party, attorney or representative asks questions based on a document without confrontation. If the ALJ later considers or relies on the document in questioning or in the decision without confrontation, a violation has occurred.
 3.  It is not a violation if the ALJ's questions seem to logically progress, based on the usual information that needs to be developed in this type of case or based on the answers received to prior questions (either the last question or a question long before).
 4.  It is not a violation when the information in an unconfronted document mirrors the testimony. On the other hand, if the document is considered when the testimony and the information in the unconfronted document are inconsistent,  there is a violation. (see checklist item 10[b]).
 5.  If the testimony is that something happened "several" times but the parties are not confronted with the document, it is a violation for the ALJ to use "5" times in a later question or to put into the decision that it happened "5" times (the "5" being an item in an unconfronted document).
 6.  Confrontation with the document includes (but is not limited to) the description of it, number of pages, identifying signatures or sources of the document, circumstances under which the document was prepared, wording and who controlled such wording omissions from the text and who decided to exclude those matters, and similar questions that would be developed on any document (see discussion in checklist item 10[b]).
 7.  The parties must be confronted with the relevant parts of the document. The record should make it clear which parts of the document were discussed with the parties or were mentioned in case the parties wanted to discuss those parts. To later use any other part of the document for questioning or for the decision (without proper confrontation) would be a violation. The ALJ should examine the document to ascertain whether the "relevant portion" is affected by any other part of the document.

*Remedial Guidelines*
 The right of confrontation is a fundamental right. Thus, if the ALJ fails to provide this right, a remedy is required. However, if there are minor or technical problems as to compliance with some of the guidelines, remedial action may not be warranted. For example, if the ALJ inadvertently fails to assure that a document is fully described, but the parties have been confronted with the document, with a full opportunity to comment, and the record shows that there is no confusion as to the identity of the document, no remedy would be required. If an

Appendix 3, page 9

attorney or representative of a party agrees to the receipt of a document as an exhibit, without objection, even though it may only have been described in general terms, then the entire document has been properly received.

Checklist item 10. (b)    **The ALJ or the Board did not show, did not offer the opportunity to comment, or did not accept the documents or reports for the record and considered or relied upon them to decide the case.**

*Violation Guidelines*
    1. The guidelines under checklist item 10 (a) are equally applicable in determining whether a violation of checklist item 10 (b) has occurred.
    2. The "accepting" of the document is a factor beyond checklist item 10(a).
*Best Practice: In accepting a document for the record, the ALJ should identify it with sufficient particularity. For example, the ALJ should state the date, number of pages, a brief description and the exhibit number assigned the document.*

*Remedial Guidelines*
    This item has several component parts. If the ALJ or Board failed to show a document to a party, and the ALJ or Board considered the document or relied upon information contained therein to decide the case or did not offer a party an opportunity to comment on a document or did not accept a document for the record, a remedy is required. The critical factor in determining whether a remedy is required is whether the document or report was considered or relied upon.
    No remedy is required if the ALJ properly showed the document to the parties, but failed to offer the opportunity to comment, where, nevertheless, the party adversely affected did comment on the document, even, for example, just by saying "no objection".
    No remedy is required, in cases of Spanish speaking claimants, where the document, or the relevant portion of a lengthy or complex document, was read to the claimant in Spanish by the translator.
    In those rare cases where a document is read by the ALJ to all parties (for example, in a telephone hearing where it is not possible to provide copies of the document to all parties prior to the hearing, or where documents could not be transmitted by facsimile during the hearing), there is no violation where the document is authenticated, and either the document or relevant portion is short, simple to read in its entirety, and the parties could fairly comment on it. It is strongly recommended, however, that all documents be exchanged prior to the hearing.
    Since an appellate review body cannot consider the document unless it has been accepted into the record, if the ALJ fails to accept the document, a remedy must be given. There are no "magic words" necessary to accept a document. (But see, the Best Practice section in the violation guidelines above.) It is sufficient if the parties are aware and the reviewer can ascertain, from the words of the ALJ, that the particlar document has been accepted and could be considered or relied upon.

Checklist item 10. (c)    **A party was not afforded an opportunity to explain adverse statements on or omissions from the summary of interview where such summary was considered or relied upon.**

*Violation Guidelines*
Appendix  3, page 10

1. This item is only violated when a specific document is involved, namely the Summary of Interview form (LO-413 series) in the local office.

2. A violation of this question could also be a violation of 10(a) or 10(b).

*Remedial Guidelines*

A remedy must always be afforded when the ALJ or Board considers or relies upon a statement or omission in a summary of interview without allowing a party to explain it.

Checklist item 11.    **The ALJ or the Board did not offer all parties the opportunity to cross-examine a witness who testified for another party.**

*Violation Guidelines*

1. Cross-examination must be offered unless the other party starts asking questions without an ALJ or Board Member prompt.

2. Cross-examination should be offered immediately after the witness finishes direct. A remedy is required when the offer of cross-examination is not made following the witness' direct testimony <u>and</u> that delay in offering cross-examination adversely affected the party's ability to ask questions. Both elements must be present to constitute a violation, as Appendix D permits cross-examination to be offered before the close of the hearing. In determining whether a party's ability to conduct cross-examination has been adversely affected, the reviewer must consider such things as: a) the length of the direct testimony, the number of areas or facts covered by the direct, and the complexity of the direct; b) the length, number of areas or facts, and complexity of the testimony of the following witnesses; c) whether there was any cross of the following witness before cross was offered where no offer had previously been made; and d) the effect of other attention-diverting intervening events, such as discussions about documents, off-the-record colloquies, recesses, ALJ comments, etc.

3. If a witness is recalled to the stand, a new right of cross-examination is created.

4. Right to conduct cross-examination exists even if the other party's witness testified to the benefit of the opposing party.

5. If a party's witness testified and left the hearing site before the opposing party arrived, the late party must demonstrate good cause for the lateness in order to participate in the hearing and shall then be given the opportunity to listen to the tape of the hearing from the beginning to the point of arrival, and shall be offered the opportunity to have the party's witness who left the hearing site recalled for cross-examination. However, the late arriving party may waive the right to listen to the hearing tape and accept a synopsis of the testimony adduced prior to the party's arrival, so long as that waiver is knowing, intelligent and voluntary, and elicited in accordance with the waiver guidelines appended to these guidelines as "Attachment A".

The ALJ reviewing the record on appeal to the Board should compare any synopsis of testimony given by the hearing ALJ to the transcript of the actual testimony to ensure that it was a fair and accurate summary. An inaccurate synopsis would constitute a violation, requiring a remedy.

The prompt party who had left does not waive the right to cross-examine the late arriving party or any of the late party's witnesses.

Appendix 3, page 11

*Remedial Guidelines*

A remedy is always required when a party is not afforded the opportunity to cross-examine a witness testifying for another party. However, the nature of the witness' testimony will determine the type of remedy that is required. For example, if the ALJ fails to offer the opportunity to cross-examine a witness whose testimony is merely hearsay, and the ALJ indicates, on the record, the hearsay nature of the testimony, and does not consider or rely upon any of that testimony for the decision, the remedy would be to simply disregard that testimony and so note in the Board decision.

Checklist item 12.    **Where a party had difficulty in or was unable to question or cross-examine witnesses, the ALJ or the Board did not offer assistance.**

*Violation Guidelines*

1. The ALJ and Board have a duty to assist in questioning and in cross-examination.

2. The ALJ and the Board must explain to the party attempting cross-examination how to frame a question and must allow the party to try to do this.

3. The ALJ and the Board must convert declaratory statements into questions if the party attempting cross is unable to frame questions.

4. If the ALJ or Board Member has tried both options on several occasions and the party still is not conducting proper cross-examination, the ALJ or the Board may move on to the next witness. If the attempts to assist were made in good faith, there would be no violation.

5. If the ALJ or Board asks the questions for a party unable to conduct cross, the questioner should make certain that the tone and content of the questions does not create an appearance of bias by the ALJ or the Board. That possibility must be considered in checklist item 18.

*Remedial Guidelines*

The ALJ has an affirmative duty to assure that each party has a full and fair opportunity to present that party's case. There should be no violation if the ALJ makes a "good faith" effort to assist the party in questioning or conducting cross-examination. However, the ALJ should not assist to the point of advocacy (taking over the party's case). The ALJ has an affirmative duty to ensure that the ALJ has sufficient facts in the record to decide all of the issues necessary to be decided.

*Retrospective checklists only.*  Checklist item 13. **Split hearings were held and a decision cannot be made without a further hearing for rebuttal.**

*Violation Guidelines*

1. This only occurs when the hearing is scheduled for different locations on different days because the parties can not go to the same hearing location at the same time or because no telephone hearing was planned. Because telephone hearings are the common means to handle this, a violation of this item is extremely rare and is highly unlikely.

2. It is not a violation when one party does not appear at the hearing site for any reason.

Appendix 3, page 12

*Remedial Guidelines*
    This item requires a remedy anytime it is violated in a retrospective case.

**Checklist item 14.**    **Before the case was closed, the ALJ or the Board did not offer all parties the opportunity to make a closing statement.**

*Violation Guidelines*
    1. Before closing the hearing, the ALJ should ask the parties something like, "Is there anything else you want to tell me before I close the hearing?"
    2. Although it is preferable to advise the parties that the hearing is about to end, failure to do so does not constitute a violation.
    3. A closing statement is only "to explain points which ... were not brought out or clarified at the hearing." Although usual practice is to allow parties to make closing arguments of law, it is not a violation if the ALJ denies an opportunity for oral argument.

*Remedial Guidelines*
    A remedy is required where the record ends with no affirmative statement that the parties have been given the opportunity to make a final statement or comment. If the ALJ asks "anything else?", it is sufficient so long as the parties understood that they had the right to explain material and relevant points they feel were not brought out or to clarify those raised at the hearing.

**Checklist item 15.**    **A party required assistance reading, speaking or understanding English at the local office and such help was not provided.**

*Violation Guidelines*
    1. If a Spanish translator is used at the hearing, then the local office should have used one.
    2. If the Local Office documents in the file do not show that they were completed in Spanish or were not translated into Spanish for the claimant, then there is a violation.

*Remedial Guidelines*
    If this item has been violated, it is necessary to consider the violation in relation to items 16, 19, and 20 to determine whether a remedy is warranted.

**Checklist item 16.(a)**    **A party needed a translator at a hearing and one was not provided.**

*Violation Guidelines*
    1. The Appeal Board is responsible for providing translators at all hearings where a party or witness needs a translator for Spanish. If none is provided by the Appeal Board, there is a violation.
    2. If a party is having trouble obtaining the services of an "adequate" translator in the other languages, the Appeal Board has a responsibility to assist them in their search and may

Appendix 3, page 13

make arrangements to locate and, if need be, to compensate an adequate translator in other languages. These matters are not violations of this checklist item.

*Remedial Guidelines*
This item requires a remedy anytime it is violated.

**Checklist item 16.(b)** If a translator was provided, the entire proceeding was not translated or a relevant part of a document was not translated.

*Violation Guidelines*
1. The introduction of the item limits the application to situations involving Spanish speakers. Otherwise, there is no checklist violation.

2. For situations other than Spanish, the lack of a checklist violation does not eliminate the due process right of each party to have the entire proceedings translated. Although there may not be a checklist violation in those other languages, appropriate remedial action may still be required.

3. The "entire proceedings" includes the introduction and *Pugh* statement and all discussions on the record. Otherwise, there is a violation (see checklist item 7).

4. On the record, a Spanish speaker can not verify the off-the-record activities unless such discussions were also translated for them. Thus, an off the record discussion that is not translated for a Spanish party could be a violation. If the ALJ resumes the record and states that the translation service was provided, there is no violation. The absence of translation of off-the-record discussions could also be a violation of checklist item VE+ 18.

5. See also the points in checklist item 10(b).

6. Verbatim and simultaneous translation is required for Spanish language translation at hearings, except in the case of telephone hearings, in which verbatim and consecutive translation is required. The Appeal Board reviewer should note any indications in the record that may reflect that the proper type of translation was not given.

*Remedial Guidelines*
This item requires a remedy anytime it is violated.

**Checklist item 16.(c)** Where claimant asserted that there was a language problem at the local office level, or such problem was apparent, and the ALJ or the Board determined that such problem was not a deciding factor, the decision fails to set forth the specific reasons for that conclusion.

*Violation Guidelines*
1. This item is a reflection of Consent Judgment paragraph 27. As such, its application is limited to Spanish speaking claimants. There is no checklist violation if any other language is involved.

2. There is a violation for Spanish speakers if the decision fails to state why the claimed local office language difficulty does not affect the outcome of the case (e.g. claimant made admissions against interest at the hearing).

Appendix 3, page 14

*Remedial Guidelines*
This item requires a remedy anytime it is violated. However, the remedy could be simply issuing a new decision which specifically explains why the language problem did not affect the claimant's right to a full and fair hearing.

**Checklist item 17.(a)  The ALJ or the Board did not grant an application for adjournment or an application for the issuance of subpoenas where good cause appears in the record.**

*Violation Guidelines*
1. The item is specific in that it only applies to situations where a party makes an application for an adjournment or for the issuance of subpoenas.
2. Where the hearing ALJ or Board Member makes a determination that a party has demonstrated good cause for not having a witness or document present at the hearing and that the party has a good faith basis for believing that the absent document is material and relevant to the issues to be decided at the hearing or the witness has material and relevant testimony to offer, an adjournment should be granted.
3. Rather than issuing a subpoena, it is acceptable to require a party to "voluntarily" produce a document or witness when the document or witness is under the control of the party. If this approach is used, the ALJ should advise the party that failure to produce the document or witness could lead to the inference that the document or witness would be adverse to the party had it been produced or had the witness appeared.
4. The ALJ must make an independent judgment as to whether a document or witness is necessary. The ALJ should consider whether the absent evidence would be cumulative or repetitive or whether it would be material and relevant. If the evidence is challenged, or its reliability or credibility is in doubt, the additional evidence may be necessary.
5. If opposing parties offer conflicting testimony and if a third person was present for the event in dispute, that third person may be a necessary witness.
6. The testimony in the record must be evaluated to determine if good cause exists for an adjournment to obtain a document or witness. For example, an admission against interest on some material point in dispute could negate the need for documents or witnesses on other points in dispute.
7. Good cause may not exist to adjourn when the party was already on notice to produce the document or witness, failed to do so, and such document or witness was under the direct control of the party. The notice could be based on the hearing notice or on the facts alleged in the initial determination/employer protest letter. The ALJ should question the party as to why the party failed to produce the document or witness after receiving such notice. If the ALJ determines that the party affirmatively decided on a strategy as to how it wished to proceed, this would not create automatic "good cause" when it later decided to proceed in a different manner.
8. A DOL witness may become necessary if the claimant identifies a particular person who advised the claimant in some way at the local office. There would not be good cause to adjourn to produce the witness if the Commissioner of Labor was previously on notice that the person might have relevant testimony and the Commissioner did not arrange for the person to be available for the first hearing. In the latter situation, the claimant's testimony on the conversation would be accepted as true.

Appendix 3, page 15

*Remedial Guidelines*

Since the premise of this item is that the party requesting the adjournment or subpoena has shown good cause, a remedy is required anytime it is violated. However, pursuant to the violation guidelines, instead of issuing a subpoena, the ALJ may direct a party to produce a witness or document which is under the control of that party. If the party does not then produce the required witness or document, without a showing of good cause to excuse the non-production, *and after warning that a negative inference may be made for such failure*, and the ALJ applies no adverse inference against that party either on the record or in the decision, a remedy is required.

**Checklist item 17.(b)    The ALJ or the Board did not offer to grant an adjournment or to issue subpoenas to obtain evidence where necessary.**

*Violation Guidelines*

1. This checklist item only applies when a witness or document may be necessary but no party has made an application for an adjournment or for the issuance of subpoenas.

2. The hearing is to be conducted so as to ascertain that the substantial rights of the parties are protected. Thus, it is the duty of the ALJ to ensure that appropriate questions are asked and that relevant and material matters are properly developed on the record.

3. See discussion above at checklist item 17 (a)4 and 5 for guidance on the meaning of "necessary".

*Remedial Guidelines*

If the record shows that it is necessary to obtain the missing evidence because such evidence may bear on a material fact or the credibility of a party or witness, a remedy is required.

**Checklist item 18.    The ALJ did not act or did not appear to act impartially in conducting the hearing.**

*Violation Guidelines*

1. The item is limited to ALJ conduct.

2. Appearance and actual bias are independent components of this item.

3. The tone and content of the ALJ's questions of a witness could indicate ALJ bias.

4. How the ALJ handles a difficult party, attorney or representative during the hearing may give an indication of ALJ bias.

5. It is common that the alleged conduct occurred off the record. The appeal level reviewer and the Board Members on the case would then have no proof of a violation and would not mark this item. The case would proceed to decision based on the record. If, independent of the hearing transcript, the Board is informed of alleged bias by a letter of complaint or otherwise, the Board will conduct a separate investigation of the allegation. If the allegation is proven true, the Appeal Board will reopen the case on its own motion.

*Remedial Guidelines*

A remedy is required anytime this item is violated.

Appendix 3, page 16

Checklist item 19.  Where the notice of determination indicates a disqualification or ineligibility as a result of claimant's failure to follow local office procedures or guidelines, or where it becomes apparent during the hearing that such is the case, the ALJ or the Board did not inquire into whether the claimant was properly informed of the procedure or guidelines he/she was required to follow.

*Violation Guidelines*

1. The item requires that the ALJ or Board Member at a hearing develop the record on what advice, if any, the claimant received about establishing or maintaining eligibility for benefits after the filing of a claim.

2. The local office has various procedures which relate to explaining to claimants how to file their claims and to what they must do while claiming benefits. The impacted legal issues could include matters such as availability, registration, reporting, refusal, some aspects of total unemployment, and willful misrepresentations and others.

3. If a witness testifies that certain things did or did not happen at the local office, that testimony is binding on the ALJ and Board Member unless it is incredible or unless it is rebutted by contrary testimony from appropriate DOL witnesses. In determining that a witness is not credible, the ALJ and Board Member may not base this assessment on the ALJ's or Board Member's own knowledge about local office procedures. Those procedures are not something of which official notice can be taken. Local office witnesses, even if they remember the specific event and are giving direct testimony from first hand knowledge, are not automatically more credible than any other witness when there is a question of what was said or done at the local office.

*Remedial Guidelines*

A remedy is required anytime this item is violated.

Checklist item 20.[2]    The ALJ or the Board did not grant benefits where the claimant's failure to adhere to proper procedure was the result of the local office's failure to follow its own procedures and guidelines, including providing materials in Spanish.

*Violation Guidelines*

1. If the local office did not follow its procedures and that failure to follow procedures resulted in the denial of benefits, the initial determination is to be overruled. Otherwise, there is a checklist violation.

2. A claimant is entitled to know what is expected of him/her. A Spanish speaking claimant is entitled to that information in Spanish so that they can properly understand it. Failure to advise claimants in Spanish is a violation of procedures. If the ALJ or Board does not then grant benefits, there is a checklist violation.

*Remedial Guidelines*

A remedy is required anytime this item is violated.

---

[2]Refer to the stipulation entered into by the Department of Labor with the MLC dated August 11, 1997 for further guidance on this issue.

Checklist item 21.    The ALJ or the Board did not give greater weight to sworn, credible testimony as opposed to hearsay *(Matter of Perry)*.

*Violation Guidelines*

1. Credible, consistent sworn testimony is entitled to greater weight than hearsay evidence to the contrary. To the extent that the document or testimony is an exception to the hearsay rules (e.g., business records and shop book rule, and *res gestae*), such document or testimony is not hearsay and is entitled to the same weight as first hand, direct testimony. It is necessary, however, that the witness be properly qualified to give such testimony or the document properly authenticated.

2. When a decision fails to state that certain testimony was specifically rejected as not credible, it is presumed that this checklist item was violated. It would not be a violation of checklist item 24.

3. Care must be taken to clearly identify what the witness personally experienced as opposed to what the witness was told had happened/occurred. Without careful questioning by the ALJ, hearsay may seem to be first hand testimony.

4. In *Matter of Jensen*, the Court ruled that a party's prior inconsistent statements may be used to reject hearing testimony as not credible, so as to allow hearsay evidence to prevail on the fact at issue. Where a prior inconsistent statement is considered, refer back to checklist items 10 (a) and 10 (b).

5. The ALJ or Board Member should be careful about when and how judicial notice is taken, when that judicial notice is used to resolve credibility. For guidance, the ALJ or Board Member should consult the Naftalison manual.

6. Before an adverse inference is charged against a party or is used to resolve credibility, the party is entitled to notice of that possibility and a reasonable opportunity to supply the document or witness that could challenge the inference.

*Remedial Guidelines*

A remedy is required anytime this item is violated.

Checklist item 22.    The ALJ or the Board granted an adjournment but rendered a decision without holding a further hearing and without making a record to explain why the case was closed.

*Violation Guidelines*

1. It is a violation when an ALJ adjourns a case to allow a party to submit some document or information that the ALJ will then include in the record without a further hearing on notice to all parties. This is a violation because it appears that the ALJ is resolving credibility based on the document rather that the testimony of the witness (see checklist item 24), and because the parties have not had a chance to review the actual document and to comment on it (see checklist item 10 [a, b or c]). Because of the potential appearance of a lack of impartiality (see checklist item 18), this is true even if the parties say that they agree to the process.

2. It is not a violation if the "adjournment" is a way to allow parties the opportunity to submit briefs or legal arguments. Although it would not be a checklist violation to fail to do so,

Appendix  3, page 18

the ALJ should take steps to insure that copies of such submissions are sent to all parties with an opportunity for each party to respond/rebut (the ALJ should set a briefing schedule).

*Remedial Guidelines*

A remedy is required anytime this item is violated.

Checklist item 23.    In § 590(10) "Reasonable Assurance" cases:    (a) The party claiming that the teacher has been given "reasonable assurance" failed to demonstrate that the teacher has been given such assurance.

*Violation Guidelines*

1. This checklist item requires the hearing ALJ and reviewer to determine whether the employer has met its burden under the statute.

2. If the employer requested the hearing, it must appear and demonstrate a basis for denying benefits. The employer would have to show some proof of an assurance before the claimant is required to take the stand as a witness. On an employer protest case, the claimant can not be used to demonstrate the reasonable assurance.

3. If the claimant requested the hearing, claimant's testimony could establish the reasonable assurance if it is also shown that the claimant is a competent witness to employer procedures regarding the reemployment of teachers.

4. The components of the proof of reasonable assurance are set forth in U.S.D.O.L. Program Letters and Appeal Board decisions. Although these components could change over time, they currently (1997) include (but are not limited to) the number of days worked in the prior year or term, the money received for such work, why the employer projects that there will be at least as many days of work in the next year or term, and that the wages and fringe benefits in the next year or term will not be substantially less than the prior year or term. Failure of the employer to demonstrate compliance with all Program Letter and decisional criteria results in the overruling of the initial determination. Otherwise, there is a checklist violation.

Checklist item 23(b)    The ALJ attached a presumption of reasonable assurance to the teacher's being placed on a per diem substitute teachers' list.

*Violation Guidelines*

1. Presence on the list from which substitutes are called to teach is some proof of one aspect of reasonable assurance. It is not enough, by itself, to establish reasonable assurance.

2. Presence on the list is only a step toward sufficient proof if there is also proof of how the list is created, how it is used, and how this relates to the chances that claimant will be called as a substitute.

Checklist item 23(c)    The teacher claimant was not afforded an opportunity to challenge or rebut the bona fides of the educational institution's assurance.

*Violation Guidelines*

Appendix 3, page 19

1.  Challenges to or rebuttal of alleged reasonable assurance could be achieved by disproving any of the necessary criteria mentioned in checklist item 23 (a) or by showing that the allegedly planned use of the list in relation to this claimant is incorrect.

2.  This checklist item is aimed at insuring that claimant is given the opportunity to be heard, regardless of the outcome of the case. Therefore, there could be a violation (not one requiring a remedy) even if claimant had prevailed.

*Remedial Guidelines*

These items establish the procedural steps which must be followed in "reasonable assurance" teacher cases. Consequently, if the claimant loses and any section of checklist item 23 was violated , a remedy is required.

**Checklist item 24.    The contents of the decision do not conform to the guidelines as contained in the Manual for Hearing Officers.**

*Violation Guidelines*

1.  The following is a brief recitation of a number of the criteria set forth in the decision portion of the <u>Manual for Hearing Officers</u>. The recitation is not inclusive of all of the required factors. The absence of a <u>Manual</u> criterion in either the ALJ or the Appeal Board decision could constitute a violation of this checklist question, depending on the analysis of the entire case record.

   a) decision is to be based on substantial evidence
   b) written in clear, simple, non-technical language that can readily be understood and comprehended
   c) findings of fact
       should be sufficiently specific, ultimate, final and accepted facts, found to be true, credible, material and relevant
       should not be conclusionary comments, matters of opinion, conclusions of judgment, or observations on the worth or credibility of testimony
       should avoid legal terminology, Latin phrases, shop jargon, code symbols, form numbers, technical or trade terms
       should be completed on each legal issue
       must show the actual and true grounds for the ultimate decision
   d) opinion (reasoning)
       based on the facts and the record
       use the language of the statute or regulation where possible
       should avoid pontification and gratuitous observations not related to case
       should omit *obiter dicta* (opinions that are not binding in the case)
       should be written with decisive and conclusive words such as "I rule", "I hold", "I find", and "I conclude"; while avoiding equivocal words such as "it seems", "it appears", and "I might say"
       should not repeat the facts found unless needed to explain a point
       should deal with and dispose of each legal issue in successive order

Appendix  3, page 20

> when credibility is involved, the basis of a conclusion that a person is
> unworthy of belief should be given in the opinion
> should indicate clearly why this decision does not follow cases cited as
> authority and explain how the cases are distinguished
> should be consistent with prior decisions that are "on all fours"
> should give the ALJ or Board Member's reasoning; and
> if the decision involves the determination of questions of law, the ALJ
> should make clear the legal grounds for his/her decision.
> e) conclusion must be explicit and unequivocal and express in clear and simple
> terms the outcome of the case

   2.  It is a violation if the decision fails to include specific points that are an integral part of the eventual ruling (e.g. a finding that claimant knew or should have known that the certification was false in connection with a willful misrepresentation). This is different from checklist item 8 and ruling on necessary issues.

   3.  It is a violation of the checklist item if the language used in the decision violates controlling authorities such as the MLC Consent Judgment (e.g., C.J. paragraph 12 says that prior inconsistent statements get the weight they deserve "without any attached presumption"; therefore decision can not say "must give greater weight" or "customarily entitled to greater weight" or similar ideas).

   4.  It is not necessarily a violation if the Board issues a decision reversing the ALJ since both conclusions could be supported by substantial evidence.


*Remedial guidelines*

   This checklist item requires a close analysis of the violation guidelines since whether or not a remedy is required will depend upon which guideline was not followed.

   Under the following circumstances, failure to comply with the guidelines would always require a remedy:(1) if the decision is not supported by substantial evidence, (2) the opinion is not based on the facts in the record, (3) the decision fails to include specific points that are an integral part of the final ruling, a remedy is required.

   At the opposite end of the continuum, sometimes failure to comply will not require a remedy. For example, if the ALJ violates this item by making minor use of legal terminology, or making gratuitous comments unrelated to the case, or repeating facts in the opinion section, no remedy is required.

   Instances of failure to follow the guidelines which are in the gray area between either end of the spectrum must be evaluated against the totality of the decision, and if the reviewer determines that the decision may lack the necessary clarity to inform all parties of the facts or reasoning leading to the final outcome, a remedy must be afforded. For example, a remedy may be required where the decision uses technical Department of Labor terminology which a lay person may not comprehend, gratuitous comments suggest the possibility that either there was a lack of impartiality or matters outside of the record were considered, the decision does not state how the credibility was resolved when there was a direct conflict in testimony, or where the decision fails to state why authorities cited in support of a party's position are not being followed.

   The mere fact that the Board decides to reverse the ALJ's decision does not mean that checklist item 24 is violated. There could be substantial evidence in the record to support either conclusion.

Checklist item 25.    The ALJ or the Board did not mark all documents properly put into evidence.

*Violation Guidelines*

    1.  Even if not formally stated as being part of the record, a document is properly part of the record if the hearing officer identifies it for the record, and the parties have the opportunity to read and examine the document and to testify as to the content of the document. If the hearing ALJ fails to mark the exhibit, there is a violation for that level.

    2.  There is no appeal level violation if the reviewer marks the document as an exhibit. The reviewer would mark the violation by the ALJ and would say that the appeal level marking remedies the violation.

    3.  There is no required formula as to how documents are to be marked or numbered. Thus, there is no violation if the ALJ uses some system even if it is different from what others may have done.

*Remedial Guidelines*

    If the hearing ALJ properly admitted a document into evidence, but failed to mark the document, and the violation is cured by the appeal ALJ correctly marking the document, no further remedial action is required.

Checklist item 26.    The minutes of all hearings have not been transcribed.

*Checklist Violation*

    1.  All hearings include the prior hearings where there were applications to reopen several ALJ cases, Board timeliness hearings, and Board merits hearings.

    2.  If there were no appearances, or if the ALJ notes indicate it, or if the ALJ decision recites it, or the markings on the folder indicate it, it can be presumed that no record was made or no testimony was taken. Thus, there would be no checklist violation for the hearing apparently scheduled for the date.

*Remedial Guidelines*

    A remedy is required anytime this item is violated except in those instances where no testimony or evidence was taken because there were no appearances.

Checklist item 27(a).    The transcript is not adequate because of recording, cassette tape, or transcription problems.

*Violation Guidelines*

    1.  There is only a violation if, due to mechanical error, transcription problems, or similar problem, important/key parts of the hearing have not been transcribed.

*Remedial Guidelines*

    A remedy is always required anytime this item is violated.

Appendix  3, page 22

Checklist item 27(b)[3]  The transcript is not adequate because the testimonial evidence has not been sufficiently developed to render an informed decision on all issues that must be ruled upon.

*Violation Guidelines*

1. The ALJ has the duty to develop sufficient testimonial evidence upon which to: a) render a fair and informed decision; and b) permit the Appeal Board to conduct a full and fair review of the record on appeal. If the testimonial evidence is not adequate to render an informed decision, at either level, this item is violated.

2. The ALJ must assure that the "who, what, when, where and how" type of testimonial evidence is elicited on all issues that must be ruled upon. For example, if the only evidence in the case was testimonial, and resolution of the case turned upon what day of the week an incident occurred, there would be a violation if the ALJ did not assure that there was testimony identifying the day of the week. Similarly, if resolution of the case turned upon whether a claimant conducted an adequate search for work, and the ALJ elicited only general testimony about the fact that the person did look, but failed to elicit testimony about whether the person complied with the search for work plan prepared at the local office or, if there was no compliance, why there was no compliance, there would be a violation.

3. The ALJ must assure that the testimonial evidence is clear, free from confusion, and sufficient to ascertain material facts or determine credibility. For example, if form numbers, technical terms, or abbreviations are used during testimony, and an understanding of that information is necessary to render an informed decision, it is a violation for the ALJ to fail to elicit testimony clarifying which forms are in issue, or the meaning of technical terms and abbreviations. However, there may be no violation if the explanatory information is sufficiently set forth in exhibits properly admitted into the record.

4. The ALJ is not required to engage in an in-depth inquest of every event in issue, search for every minute detail, or seek clarification of every ambiguity. Rather, the ALJ only needs to obtain sufficient information to make a fair evaluation of the material facts and the credibility of witnesses so that an informed decision can be rendered.

5. This item is not violated if the ALJ makes an appropriate effort to develop the testimonial evidence, but the evidence is not forthcoming because none of the parties or witnesses has the knowledge necessary to answer the question. However, if there were other steps which the ALJ should have taken to develop the record as a whole, for example, adjourning the hearing to obtain a necessary witness or document, there could be a violation of other items, such as 17(a or b), or 24.

*Remedial Guidelines*

A remedy is always required anytime this item is violated.

Checklist item 28.   The file does not contain a copy of the ALJ decision and a proper notice of receipt of appeal addressed to all necessary parties and their representatives.

---

[3]This item is an error in proceeding, requiring remedial action, but is not a violation of the MLC consent decree.

*Violation Guidelines*

1. The ALJ decision and the Notice of Receipt of Appeal forms are to be sent to all known parties and known representatives at their last known address. It is a violation if the ALJ computer system's names and addresses were not updated or corrected before the decision was generated and mailed.

2. There is no violation if the file contains a revised Notice of Receipt of Appeal form which was reissued to correct a previous error in a name or address.

3. There is no violation if a representative is not on the Notice of Receipt of Appeal form because the representative joined the case after the Notice of Receipt of Appeal form had been properly issued (but see checklist item 29 for a possible violation when this situation occurs).

4. Each party and each representative is entitled to receive one copy of the ALJ decision and of the Notice of Receipt of Appeal form at the correct address. Neither a party nor a representative has a right to multiple copies at additional addresses for their personal or administrative convenience. Therefore, there is no violation if multiple copies are not sent so long as the addresses used are themselves proper for that party or representative.

*Remedial Guidelines*

A remedy is always required anytime this item is violated. However, the nature of the problem will determine the type of remedy. For example, since all parties and their representatives are entitled to receive the decision and all notices, if only a party but not that party's representative receives the decision or notice, and a Board decision is rendered, that case should be reopened and a proper notice with a new decision sent to all parties and their representatives. On the other hand, if the ALJ decision or notice is missing from the file and another copy of the decision or notice can be obtained and put into the file, and there is proof that the parties were sent the decision or notice, no further remedy would be required.

Checklist item 29.   **Additional representatives, who have entered the case on appeal, have not been added to the Notice of Receipt of Appeal or the Board's registration information database.**

*Violation Guidelines*

1. This item was written before the appeal level computer system was installed. The item effectively reads that the additional party has not been added to the registrations screens before a decision was generated.

*Remedial Guidelines*

A remedy is always required anytime this item is violated unless the file contains a statement on the appeal which evidences that the representative was aware of the notice and timely responded.

Checklist item 30.   **Timely requests, for an opportunity to examine the hearing transcript and for an extension of time to submit statements, have not been answered.**

*Violation Guidelines*

Appendix 3, page 24

1. The request to see the minutes or for an extension may be submitted prior to the processing of the Notice of Receipt of Appeal. Therefore, the request can be contained in the actual writing which is the basis for the appeal originally being processed.

2. If, through a clerical oversight, the reviewing ALJ is the first to discover an extension request and if the recommendation is that the appellant prevail, it is permitted to not answer the extension request if this action will allow for the meeting of desired levels of achievement for appeal promptness. In such situations, the violation is to be marked as occurring but it is to be explained away in the comment section of the checklist.

3. If a timely request comes in from a losing party, it must always be answered.

*Remedial Guidelines*

If, after making a timely request to examine the transcript or submit a statement on appeal, the losing party's request has not been responded to, a remedy is always required. However, where the party making the request has prevailed on every issue, the failure to grant the request does not require a remedy.

Checklist item 31.    **Copies of papers submitted on appeal were not sent to all parties.**

*Violation Guidelines*

1. The writing recognized as the "Notice of Appeal" must be sent to other parties whenever it contains any allegation or argument. Thus, there is no violation if this document is not normally sent to the other parties when it says nothing or simply "I appeal" or "I disagree with the ALJ's decision".

2. If any submission is returned by the Appeal Board because it is untimely, there is no need for that statement to be sent to the other parties.

3. The Commissioner of Labor has advised the Appeal Board that A.S.O. does not want to receive the copy that would normally have been sent to the Commissioner unless the case is one involving an employer liability issue. Therefore, there is no violation if a copy of other correspondence was not sent to the Commissioner.

4. The item refers to "submitted on appeal". Therefore, communications from the Appeal Board to any party need not have been sent to all parties. Nevertheless, if a letter from the Appeal Board is anything other than a form letter, copies should be sent to all other parties to maintain the appearance of impartiality. This would include Appeal Board answers to inquiries from legislators and other government officials.

5. There is no violation if the reviewing ALJ notices a clerical oversight and has the correspondence processed before the recommended decision has been prepared.

6. There is no violation if improperly submitted correspondence is placed in a sealed envelope within the file so long as the envelope is clearly marked to advise ALJs and Appeal Board Members that they may not review the content of the sealed envelope. This alternate system for handling mail is only to be used if such action allows for the meeting of desired levels of achievement for appeal promptness. The preferred method is to promptly return such correspondence to the sender.

*Remedial Guidelines*

Appendix 3, page 25

A remedy is always required where the appeal ALJ or a Board Member reads an appeal paper, not sent to all parties, which contains any substantive discussion of the appeal itself. If, however, the submission is returned to a party unread, or is placed in a sealed envelope without being read, no remedy is required. If the appeal ALJ read the improper submission and put it in the sealed envelope, the case is to be reassigned to another appeal ALJ. If the appeal ALJ did not read the submission before putting it into a sealed envelope, that appeal ALJ can continue to review the file and recommend a decision.

**Checklist item 32.    Evidence supplemental to that introduced at a hearing was considered or relied upon by the Board without the consent of all parties to the appeal, and the Board failed to hold a hearing at which the evidence was introduced.**

*Violation Guidelines*
    1.  See checklist item 10(a) for definitions of "consider" and "rely".
    2.  This checklist item refers to evidence and not written arguments contained in statements submitted. Thus it is not a violation if the decision uses the reasoning of the statement.
    3.  It is not the current practice of the Appeal Board to receive "evidence" upon the consent of the parties. Evidence is received only through a hearing by the Appeal Board or on remand.

*Remedial Guidelines*
    A remedy is required anytime this item is violated.

GUIDELINES FOR DETERMINING THE VALIDITY OF A WAIVER OF DUE PROCESS AND MLC CONSENT DECREE RIGHTS DURING AN UNEMPLOYMENT INSURANCE HEARING

I.    GENERAL PRINCIPLE

During an unemployment insurance hearing, a party has the right to waive a due process or MLC Consent Judgement right.  However, such waiver will not be deemed valid and enforceable unless the record contains *substantial evidence* that the waiving party knowingly, intelligently and voluntarily intended to relinquish the right.

The ALJ has an affirmative duty to ensure that the waiver is made "knowingly, intelligently and voluntarily."  The ALJ should do so by explaining to the waiving party, in clear and understandable language, the nature of the right and the consequences that would normally result from a waiver of that right. The ALJ should inform the waiving party in a fair and unbiased manner and must not encourage the party to waive any of its rights in order to expedite the hearing process.

The following guidelines are to be used to assist the ALJ and Board Member in the application of the general principle to the case under review.  These guidelines are not intended to be all-inclusive, but rather illustrative of the kinds of considerations the reviewer should take into account when completing an MLC checklist.

II.    APPLICATION GUIDELINES

A.  Waiver of right to representation.
The need to determine the validity of a waiver arises when the following conditions are present:
1. The party has requested an adjournment of the hearing in order to obtain the services of an attorney or representative; and
2. The party who requested the adjournment then indicates that he may wish to proceed with the hearing without representation.

The hearing ALJ must then take the following steps:
1. Inform the party about the Board's policy on adjournments and closings with leave to reopen.
2. Describe how the case would proceed if the case was closed with leave to reopen or, if appropriate, describe how the case would proceed if the case were adjourned.
3. Describe how the case would proceed if the party chose not to adjourn and what would be expected of him during the course of the hearing.
4. Ascertain that the party understands that he is giving up his right to an adjournment or closing with leave to reopen.
5. Find that the party has or has not made a voluntary, knowing and intelligent waiver of his rights and proceed accordingly.

Waiver Guidelines
Appendix 3, Attachment A

An example of the colloquy that the ALJ should have on this issue is, as follows:

*It appears that you have good cause for an adjournment to obtain counsel or other representation. If you wish, I will adjourn the case (or in appropriate cases, close the case, with leave to reopen) to give you an opportunity to obtain representation.*

*If I adjourn the case, I will expect you and your representative to be present at the adjourned date. We can set that date now or will can mail you a notice with a new date.*

*If you choose to proceed with the hearing today, you will be waiving your right to have an attorney or representative with you during today's hearing. That means that you will be representing yourself. You will then have to make all the decisions during the hearing that an attorney or representative would otherwise make for you. For example, you will be asked to cross-examine any witnesses called by the opposing party, you will be expected to make any objections you may have to the receipt in evidence of documents or testimony offered by the opposing party and you will be expected to present your own testimony and evidence.*

*Once you choose to proceed without a representative, you cannot change your mind during the course of today's hearing.*
*If we conclude the testimony and evidence today, I will render my decision on what I hear and see today. You or your representative will not be able to submit anything further at a later date. Of course, if you disagree with my decision, you can appeal to the Appeal Board.*

*Do you understand your rights with respect to proceeding with or without representation?*

The reviewing ALJ, upon examining the record for the sufficiency of the waiver, should consider the following:

    1. Did the ALJ offer the party an adjournment or closing of the case in order to secure the presence of counsel or a representative?
    2. Did the ALJ inform the party of the Board's adjournment and closing policy and explain it adequately?
    3. Did the ALJ adequately explain how the case would proceed if it were adjourned or closed?
    4. Did the ALJ adequately explain how the case would proceed if the party chose not to adjourn and what would be expected of him during the course of the hearing?
    5. Does it appear from the record that the party understood his options?
    6. Did the ALJ encourage the party to waive his right to an adjournment or to a closing with leave to reopen?
    7. Does the record support a finding that the waiver was voluntary, knowing and intelligent? Does it appear from the record that the party freely made the waiver, without encouragement and that he did so knowing his options and knowing the potential consequences of those options?

Waiver Guidelines
Appendix 3, Attachment A

B. Waiver of right to adjournment to produce witnesses or documents or to have the same subpoenaed.

The need to determine the validity of a waiver arises when the following conditions are present:

1.(a) The party has requested an adjournment of the hearing to produce a material witness or document and has shown good cause for the request; or

(b) The ALJ has determined, on his own, that an adjournment would be appropriate to obtain a necessary witness or document; and

2. The party who requested an adjournment or whose witness or document the ALJ found necessary, then indicates that he may wish to proceed with the hearing, rather than adjourn.

The ALJ must then take the following steps:

1. Inform the party that he has the right to an adjournment to obtain the witness or document.

2. Describe how the case would proceed if the adjournment were granted.

3. Describe how the case would proceed if the party chose not to adjourn.

4. Describe the consequences of not adjourning.

5. Ascertain whether the party understands that he is giving up his right to an adjournment for the purpose stated.

6. Find that the party has or has not made a voluntary, knowing and intelligent waiver of his rights and proceed accordingly.

An example of the colloquy that the ALJ should have on this issue is, as follows:

*It appears that you have good cause for an adjournment to obtain evidence that might be favorable to your case, to wit:* _____.

*If the case is adjourned for that purpose, the document or witness must be produced at that time.*

*If the witness or document is under your control, I will not adjourn the case again for the same purpose absent a further showing of good cause. Do you know how long it will take you to obtain the document or when the witness will be able to appear?*

*If the witness or document needs to be subpoenaed, I will issue the subpoena. You should be aware that if the party fails to appear or fails to produce the requested document, I have no authority to take further action to compel the witness to appear or to compel the production of the document. However, if the witness is under the control of or the document is in the possession of the opposing party, I can decide that upon the failure of that party to produce the witness or document, I will make a negative inference from that party's failure. That is to say, I can decide that they purposely failed to produce the witness or document because it would hurt their case on the issue or fact to be decided.*

*If you decide to proceed today, without the witness, document or subpoena, you will not be given an opportunity to present this additional evidence later. I will then have to decide the case based on the evidence and testimony I receive today. Do you understand your right to an adjournment? Do you understand how I will proceed if you choose to go forward today and give up your right to adjourn for the other evidence? Do you have any questions?*

Waiver Guidelines
Appendix 3, Attachment A

The reviewing ALJ, upon examining the record for the sufficiency of the waiver, should consider the following:

1. Did the ALJ offer the party an adjournment to obtain the witness or document?
2. Did the ALJ adequately explain the consequences of adjourning or not?
3. Does it appear from the record that the party understood his options?
4. Did the ALJ encourage or suggest that the party waive his right to an adjournment?
5. Does the record support a finding that the waiver was voluntary, knowing and intelligent? In other words, does it appear from the record that the party freely made the decision to waive an adjournment, without encouragement or suggestion and that he did so knowing what his options were and knowing the potential consequences of those options?

If the reviewing ALJ were to find that the waiver was not voluntary, knowing and intelligent, them the applicable checklist item is violated and a remedy is warranted.

Waiver Guidelines
Appendix 3, Attachment A